Cur. advis. vult.

And a few days after, Cabell, J. said— The six special counts in the amended declaration are all *207 against the defendant as indorser of a bill of exchange, . . , charging him to be liable to pay the same under the custom of merchants. I understand, that all the judges are of opinion, that these counts shew that the defendant was not liable to pay the bill, under the custom of merchants; cause they shew, that the demand of payment was not made until the day after the expiration of the three days of grace allowed by that custom. I understand, that all the judges are of opinion, that if these counts had been demurred to, the demurrer must have been sustained, or that if the defendant had, at the trial, moved the court to instruct the jury to disregard them, the court ought to have given that instruction. I understand, moreover, that it is the opinion of all the judges, that the plaintiff could not properly have introduced any evidence, at the trial, tending to prove a special custom of the bank of Marietta, allowing four days of grace; he having declared on the custom of merchants, and not on the special custom of the bank. In all these opinions I concur. But the defendant having taken issue on the faulty counts, and having failed to demur, or to move for an instruction to disregard them, a question arises, whether, under these circumstances, it was competent to him, on the trial of the issue, to move the court for the instruction set forth in the second bill of exceptions; namely, that the three days of grace according to the custom of merchants, having expired before the demand of payment was made, “ the demand was not a good and sufficient demand of payment of the bill, and that for want of such good and sufficient demand, the defendant was discharged from his liability arising from his indorsement.” This question was not adverted to in the argument at the bar; and as it involves a principle of great importance, not only to the parties in this case, but to the public generally, I wish, before I decide it, to hear all that the counsel on both sides may be disposed to urge upon it.
The question thus propounded by the court, involved the construction and effect of the new provision in the statute *208 of jeofails, 1 Rev. Code, ch. 128. § 103. p. 512. that, no judgement, after verdict, shall be staid or reversed, for any defect whatsoever in the declaration or pleadings, whether of form or substance, which might have been taken advantaSe °f by a demurrer, and which shall not have been so taken advantage of.” And this question was argued by the counsel for both parties; but Leigh intimating that the declaration appeared to him to be a good one, and the court telling him he was quite at liberty to argue that point—
He said, he understood the only objection to the six special counts of the declaration to be, that they all (of course) founded the plaintiff’s demand upon the defendant’s liability as indorser, under the usage and custom of merchants; and yet they all shewed (as the objection supposed) that the defendant was not so liable; because they all alleged, that the demand of payment of the acceptor, was not made until the day after the expiration of the days of grace allowed by the custom of merchants, in other words, by the general law merchant. These counts, all, after stating the drawing, the acceptance, and the indorsements of the bill, allege, that, “ afterwards, when the bill became due and payable according to the tenor and effect thereof, to wit, on the 27th December 1816, at the bank of Marietta, in the state of Ohiof the bill was duly presented for payment &c. Now, the time when the bill became due and payable, according to its tenor and effect, depended on the law merchant applicable to the case : if there was no particular law of the state of Ohio, and no particular usage of the bank of Marietta, then, by the law merchant, the bill was payable on the third day of grace: if there was any law of Ohio, or any special usage of the bank of Marietta, regulating the days of grace, and requiring bills to be presented and payment demanded on the fourth day of grace, then (and still according to the law merchant) the bill was payable and properly demandable on the fourth day of grace; and the plaintiff alleging presentation and demand when the bill became due and payable according to the tenor and effect thereof, was entitled to *209 shew any particular law or special custom requiring presen- • tation and demand on the fourth day of grace, since the law merchant made the bill due and payable on the day when such particular law or local custom required it to be presented and demanded. In this respect, the view, which Mr. Stanard had taken in his first argument, of the law of the case, was certainly just. The effect of this general law of pleading, and letting'in evidence of a local law or usage under such a declaration, would not he to surprize the defendant at all; since he, having indorsed the bill payable at a particular bank, was held to take notice of the special usages of the bank, if there were any, and to know that the bill would be dealt with accordingly (1 Peters, 32.) and was, therefore, as distinctly apprised, that evidence of the special usage would be adduced to prove the plaintiff’s case, as if the usage had been specially pleaded by him. Accordingly, he said, in declarations upon bills payable in foreign places, where the days of grace allowed were different from those allowed by our general law merchant, the law or usage of the foreign place on which the bill is drawn, though that must regulate the days of grace, was never set out by the plaintiff in his declaration. He referred to the form of a declaration on a bill drawn on Venice, in Bailey on bills, 265. in which, though six days of grace are allowed at Venice, Chitt. on bills, 339. yet the law and usage of Venice in this particular, are no wise set forth, and the time of presentation and demand, alleged under a scilicet, is not the sixth day of grace, but an earlier day. And in Bailey’s commentary on his form of the declaration (p. 283, 4.) the distinction was stated very clearly—that if the declaration allege presentation and demand on a particular day, without any express averment that the presentation was made on the day when the bill became payable, then the day stated must be the very day when in truth it became payable; but, if there be such an express averment (meaning, if due presentation and demand is averred, and then the date of such presentation stated under a scilicet) exactness as to the day *210 is immaterial—perhaps, said Bailey—but all doubt was re» moved by the case of Bynner v. Russell, 7 Moore, 266. 1 Bingh. 23. S. C. There, the declaration against the drawer of a bill averred, that when it became due and payable according to the tenor and effect thereof, to wit, on the 31st March 1822,” it was duly presented for payment. And upon special demurrer, shewing for cause, that the 31st March was Sunday, the court held the declaration good: that “ the presentment was stated to have been made when the bill became due and payable according to the tenor and effect thereof,” and “ that was quite sufficient, as the tenor and effect of the bill would appear upon the face of it. Besides, as it was laid under a scilicet, the precise day was not materia], and need not be proved.” Therefore, in the present case, he said there could be no doubt, that under all the special counts in this declaration, the plaintiff might have proved presentation and demand on the third day of grace, if the bill had in fact been presented on that day. But he went farther; he thought, that, if by any local law or usage, the bill ought to have been presented on the fourth day of grace, the plaintiff might have given evidence of such local law or usage, and proved presentation and demand according to it, though the local law or usage was not alleged in the declaration. Mr. Justice Thompson, indeed, in delivering the opinion of the court in Renner v. Bank of Columbia, 9 Wheat. 396. said, that if that case had come before the court upon demurrer to the declaration (which it did not) “ there being no averment of the special custom as to the demand on the fourth day, and the general rule being that the demand must be made on the third, if the declaration alleged it to have been made on the fourth, the joinder in demurrer would admit the fact, and, of course, that the demand was too late. But had the declaration contained an averment of the special custom, it must have alleged the demand op the fourth day; that is, according to the legal effect of the note; and a demand laid on any other day, would have been bad.” And, probably, it was this dictum, *211 (for it was avowedly nothing moro) that had led the judges of this court to the conclusion which had been announced? that the special counts in this declaration were faulty and demurrable. But, after it was settled, that the law merchant, though it in general requires the bill to be presented on the third day of grace, yet respects any local law or usage of the place on which it is drawn or where it is made payable, and requires, if the local law or usage requires, presentation on the fourth day;—and after it was also settled, that all parties to the bill are bound by the local law or established usage of the place where it is made payable or negotiable, whether they have a personal knowledge thereof or not. Mills v. Bank of U. S. 11 Wheat. 438. Bank of Washington v. Triplett &c. 1 Peters, 32, 3, he had never been able to sec any reason why the local law or usage should be pleaded in the declaration, in order to entitle the plaintiff to give evidence of it at the trial, and of presentation in conformity with it, any more than that the holder sueing upon a bill drawn upon a foreign country, should be required to set forth the law or usage of the country on which it is drawn, in order to entitle him to give evidence of the law or usage of the foreign slate, and of the bill having been dealt with as the foreign law or usage required. The parties to a bill are held to have notice of, and to contract with reference to, the local usage of a particular bank at which the bill is made payable or negotiable, just as they are held to have notice of, and to contract with reference to, the law or usage of a foreign country, in case the bill be drawn upon it; and both alike are matters of fact, and matters of fact known, or presumed to bo known, to the defendant as well as the plaintiff; so that the very nature of the demand apprises the defendant, that he must come prepared to try, whether the bill has been dealt with according to the law or usage of the place where it was made payable or negotiable, that being the very point on which his liability depends.
*212 Carr, J.
On 'my first examination of this case, I in-dined to the opinion that the second exception was well taken, and must reverse the judgement. Some of my brethren differed with me, and on conference, and further consideration, I acceded to the opinion, that in the actual posture of the case before the jury, the defendant'had no right to the instruction of the court on the point submitted and stated in the second bill of exceptions, it being foreign to the issue joined between the parties. This was founded on an understanding of the declaration, which the arguments and authorities of Mr. Leigh have satisfied me was erroneous. The six counts all averring, that the bill was “presented when it became payable according to the tenor and effect thereoff I do not think the scilicet, which follow can vitiate these positive averments: and upon the issue taken upon these counts, I think the whole matter, whether of the general custom, or any special custom, which might be proved, was fairly before the jury. With these preliminary remarks, I proceed to the examination of the case.
I do not see how we can look to the case agreed on the first trial. A new declaration was afterwards filed at rules, whither the cause was sent for that purpose; a new plea put in; a trial upon it, and a general verdict for the plaintiff. On that trial the defendant took several exceptions to the opinion of the court; and to these I think we are confined.
The first bill states, that the defendant asked the opinion of the court on several important points; but they are so defectively stated, that it is impossible from the case made by the exceptions, to say that the court erred in refusing the instruction.
Then, as to the second bill of exceptions: as I understand it, the defendant propounded to the court a naked point'of law, arising upon the face of the bill, and the proof of the demand; asking the court to instruct the jury, that it is a general rule of the law merchant, that a demand of payment of a bill of exchange, must be made on the third *213 day of grace, and that a failure to make such demand discharges the indorser. Now, if this be, in truth, a correct statement of the general rule, the court ought so to have ° 7 ° declared it. Nor could such declaration have injured the plaintiff in the slightest degree, if he had evidence to take his case out of the rule, either by proof of a particular custom at the bank of Marietta, or by a subsequent binding promise of the defendant: for, in such case, the plaintiff would immediately move for an instruction, that the special custom governed the case, or that the subsequent assumpsit dispensed with proof of a regular demand. But how did the refusal of the court to give the instruction prayed by the defendant affect him ? He contended, that this was a rule of law to the benefit of which he was entitled, and he asked the court (the proper tribunal) to declare this law. When the court refused to tell the jury that such was the law, giving no reason for such refusal, it, in effect, instructed the jury that such was not the law. Was this correct ? • The supreme court of the U. States, in Renner v. Bank of Columbia, said, “ we admit, in the most unqualified manner, that the usage of making a demand, on the third day of grace, has become so general, that courts of justice will notice it ex officio, and in the absence of any proof to the contrary, will presume that such was the understanding of all parties to a note when they put their names to it.” • In Mills v. Bank U. States, the court said, “ There is no doubt, that according to the general rules of law, demand of payment ought to be made on the third day, and that it is too late, if made on the fourth day of grace.” In The Bank of Washington v. Triplett &c. the chief justice, delivering the opinion of the court, after stating the third as the last day of grace, said, “ The allowance of days of grace is a usage which pervades the whole mercantile world. It is now universally understood to enter into every bill or note of a mercantile character, and to form so completely a part of the contract, that the bill does not become due on the day mentioned on its face, but on the last day of grace. A *214 demand of payment previous to that day will not authorize a protest, or charge the drawer.” This is the unquestionable general rule; and so in this case, ought the circuit court to have declared it. Its refusal to do so, was clear error.
With respect to the third bill of exceptions, the ground of that was removed by the release of part of the damages.
As to the fourth. A motion was made for a new trial, on the ground that the verdict was contrary to the justice of the case upon the evidence. We have no facts certified by the judge of the court below, but the whole evidence ..set out at large, and that evidence (as I understand it) contradictory in several respects. In Bennett v. Hardaway, this court (apparently, after great consideration) decided that it would not examine the evidence, which had been before the court below, on a motion for a new trial, but such facts only as the judge would certify; and though in Carrington v. Bennett, this case was, as I thought, a little departed from, a majority of the court disclaimed any such intention; and being a divided court of three judges, could not overrule the previous solemn decision, or settle the law. Nor does the case of Ewing v. Ewing, according to my recollection of it, purport to overrule Bennett v. Hardaway: I am sure I should not have concurred if I had so understood it. That case, therefore, I still consider as giving the law; and under it we cannot look into this evidence set out at large, and. contradictory. This answers the remark also, that if upon the whole record, the court should see that the case of the party, against whom the instruction is given, is a bad one, the judgement should not be reversed, though the instruction were wrong. Here, we cannot look into the evidence to see how the whole case is : for, if we may not look into it, to see whether the party has a right to a new trial, surely we cannot, to support an erroneous instruction given against him, upon the ground that his case is bad.
I think that the" judgement must be reversed, and the case sent back, with direction to the court to give the instruc *215 tion stated in the second bill of exceptions, if it should be asked on the new trial.
CabexjL, J. I am of opinion, that the defendant was entitled to the instruction stated in the second bill of exceptions, and, therefore, the court erred in refusing to give that instruction ; and, consequently, that the judgement must be reversed.
Brooice, J. concurred.
Tucker, P.
The first question in this case is, that which arises out of the first verdict, and the order setting it aside; and of this I shall dispose by the single remark, that as the verdict consisted of an undigested mass of evidence, instead of finding the facts, to be submitted to the court, it was not such a verdict as would have justified the court in pronouncing judgement in the cause. The cases cited at the bar are decisive.
Proceeding then to the second trial, we find five bills of exceptions. The fourth of these arose out of a motion for a new trial, on the ground that the verdict rendered by the jury was against evidence, which motion was denied by the court. The defendant thereupon moved the court to certify the facts, which the court refused to do, but certified the evidence given upon the trial. This, according to the case of Bennett v. Hardaway, was irregular, nor can the case even be brought within the broader principles, which seem to be avowed by one of the judges in Carrington v. Bennett. For the bill of exceptions, presents a mass of mere evidence for the consideration of this court. In this mass of evidence, is the conflicting testimony of witnesses upon points probably of vital importance. The facts are not, therefore, so stated as to enable the court to decide. But this seems not to have been the fault of the defendant or his counsel. The court refused to certify the facts. What is the consequence ? Can this court set aside a verdict for *216 an error of the court below posterior to its rendition ? This would be to make the effect precede the cause. Or, must the party grieved resort to compulsory means, to compel the court to certify the facts ? a question which seems to have been discussed in Vaughan v. Green, 1 Leigh, 292. Such a course would, in this case, be impracticable, as the judge who signed this bill of exceptions, is no longer the judge of the circuit, and he who now presides knows nothing of the case.
From these difficulties we must seek relief, in a resort to the other points in the cause. The next I shall consider, is the second bill of exceptions. I was, at first, inclined to think that this was not well taken in point of form, as it seemed to have selected a garbled state of the evidence, and the instruction asked seemed broader than would have been justified. But I am satisfied this is not so. The facts upon which the motion was rested, were alone necessary to be stated, provided it sufficiently appeared the instruction asked was relevant and material. This has been done; and the instruction asked, not only did not and could not have precluded the defendant from moving a counter instruction upon other facts (such as that four days of grace were allowed at- the bank of Marietta, which would have made the demand and protest valid) but it did not go farther than it ought to have done, provided the instruction asked was proper in point of law. This, then, is the question to be solved, and this appeared to me to depend upon a preliminary question as to the declaration in the case.
My impression was, that the six first counts were defective in this, that the statement in each of them of the presentment for payment, “when the bill became due and payable, to wit, on.the 27th December 1816” (which was the day after the expiration of the days of grace) was inconsistent with itself: or that, if the words “ on the 27th December” were to be taken as explaining or modifying the former words, which seemed the fair construction, then the declaration did not shew presentment until after the ex *217 piration of the three days of grace, and so furnished no ground of action against the defendant. This scilicet, indeed, is often rejected, when it makes nonsense or is repugnant; but when it only serves to explain or to modify the meaning of what goes before, it will not be disregarded, and particularly where the day laid is material. For it is said in Hobart, 172. that a videlicet shall make a restriction, where the words are general; and where it is not repugnant to the preceding matter, but well agrees with it, there it amounts to a direct affirmation. See 1 Wms. Saund. 170. note 2. 2 Id. 291. note 1. Salk. 325. 6 Com. Dig. 60. 19 Viner, 46. 12 Mod. 579. 611. Upon examination, however, I find that the case of Bynner v. Russell in 7 Moore, cited by Mr. Leigh, is a direct authority upon the point before us, and establishes that in a case like this, the scilicet must be rejected. To this authority 1 defer (and the rather because I am averse to technicalities) though it appears to me at variance with the established doctrines in relation to the scilicet. The scilicet, then, being rejected, the declaration states the case of a presentment “ when the bill became due and payable,” that is on the third day of grace; for as no cutsom is stated, the general law merchant must be intended ; and, as the evidence proved the presentment on the fourth day instead of the third, it neither supported the declaration nor shewed a cause of action. Hence, the instruction would have been proper.
The judgement must therefore be reversed, and the cause sent back, when, if the pleadings remain unchanged, and the evidence of presentment and protest should be the same as set forth in the second bill of exceptions, without any thing more, the instruction asked for at the last trial, must, if again required, be given.
The judgement entered by the court conformed with the opinion of the president.