[Promissory Note.]

## Mills, *Plaintiff in Error,*
## *against*
## The President, Directors, and Company of the Bank of the United States, *Defendants in Error.*

No precise form of notice to the endorser of a promissory note is necessar. ; and it is not necessary to state, in the notice, who is the holder ; nor will a mistake as to the date of the note vitiate the notice; if it conveys to the party a sufficient knowledge of the particular note which has been dishonoured.

It is not necessary that the notice should contain a formal allegation that it was demanded at the place where payable. It is sufficient that it states the fact of non-payment of the note, and that the holder looks to the endorser for indemnity.

By the general law, demand of payment of a bill or note must be made on the *third* day of grace ; but where a note is made for the purpose of being negotiated at a bank, whose custom is to demand payment, and give notice on the *fourth* day, that custom forms a part of the law of the contract ; and it is not necessary that a personal knowledge of the usage should be brought home to the endorser for that purpose.

The general rule of law, requiring proof of the title of the holders of a note, may be modified by a rule of Court, dispensing with proof of the execution of the note, unless the party shall annex to his plea an affidavit that the note was not executed by him.

THIS cause war argued by Mr. *Wright* for the plaintiff in error, and by Mr. *Webster* for the defendants in error. *March 8th.*

Mr. Justice Story delivered the opinion of the Court. *March 18th.*

1826.          This is a suit originally brought in the Circuit
Mills        Court of Ohio, by the Bank of the United States,
v.          against A. G. Wood and George Ebert, doing
Bank of the  business under the firm of Wood and Ebert,
U. States.   Alexander Adair, Horace Reed, and the plain-
tiff in error, Peter Mills. The declaration was
for 3,600 dollars, money lent and advanced.
During the pendency of the suit, Reed and
Adair died. Mills filed a separate plea of *non
assumpsit*, upon which issue was joined; and up-
on the trial, the jury returned a verdict for the
Bank of the United States for 4641 dollars;
upon which judgment was rendered in their fa-
vour. At the trial, a bill of exceptions was ta-
ken by Mills, for the consideration of the mat-
ter of which the present writ of error has been
brought to this Court.

By the bill of exceptions it appears, that the
evidence offered by the plaintiffs in support of
the action, " was, by consent of counsel, permit-
ted to go to the jury, saving all exceptions to its
competence and admissibility, which the counsel
for the defendant reserved the right to insist in
claiming the instructions of the Court to the jury
on the whole case."

The plaintiffs offered in evidence a promissory
note signed Wood and Ebert, and purporting to
be endorsed in blank by Peter Mills, Alexander
Adair, and Horace Reed, as successive endorsers,
which note, with the endorsements thereon, is
as follows, to wit: "Chilicothe, 20th of July,
1819. Dollars 3,600. Sixty days after date I pro-
mise to pay to Peter Mills, or order, at the office

of discount and deposit of the Bank of the United States, at Chilicothe, three thousand six hundred dollars, for value received. Wood & Ebert." Endorsed, " Pay to A. Adair or order, Peter Mills." " Pay to Horace Reed or order. A. Adair." " Pay to the P. Directors and Company of the Bank of the U. States, or order. Horace Reed." On the upper right hand corner of the note is also endorsed, " 3185. Wood & Ebert, 3,600 dollars, Sep. 18—21." It was proven, that this note had been sent to the office at Chilicothe to renew a note which had been five or six times previously renewed by the same parties. It was proven, by the deposition of Levin Belt, Esq., Mayor of the town of Chilicothe, that, on the 22d day of September, 1819, immediately after the commencement of the hours of business, he duly presented the said note at the said office of discount and deposit, and there demanded payment of the said note, but there was no person there ready or willing to pay the same, and the said note was not paid, in consequence of which, the said deponent immediately protested the said note for the non-payment and dishonour thereof, and immediately thereafter prepared a notice for each of the endorsers respectively, and immediately on the same day deposited one of said notices in the post-office, directed to Peter Mills, at Zanesville, (his place of residence,) of which notice the following is a copy: " Chilicothe, 22d of September, 1819. Sir, you will hereby take

1826.

Mills
v.
Bank of the
U. States.

1826.

Mills
v.
Bank of the
U. States.

notice, that a note drawn by Wood & Ebert, dated 20th day of September, 1819, for 3,600 dollars, payable to you, or order, in sixty days, at the office of discount and deposit of the Bank of the United States at Chilicothe, and on which you are endorser, has been protested for non-payment, and the holders thereof look to you. Yours, respectfully, Levin Belt, Mayor of Chilicothe." (Peter Mills, Esq.) It was further proven by the plaintiffs, that it had been the custom of the banks in Chilicothe, for a long time previously to the establishment of a branch in that place, to make demand of promissory notes, and bills of exchange, on the day after the last day of grace, (that is, on the 64th day,) that the Branch Bank, on its establishment at Chilicothe, adopted that custom, and that such had been the uniform usage in the several banks in that place ever since. No evidence was given of the hand writing of either of the endorsers. The Court charged the jury, first, that the notice being sufficient to put the defendant upon inquiry, was good, in point of form, to charge him, although it did not name the person who was holder of the said note, nor state that a demand had been made at the bank when the note was due. 2. That if the jury find that there was no other note payable in the office at Chilicothe, drawn by Wood & Ebert, and endorsed by defendant, except the note in controversy, the mistake in the date of the note made by the notary in the notice given to that defendant, does not impair the liability of the said defendant, and the plain

tiffs have a right to recover. 3. That should the jury find that the usage of banks, and of the office of discount and deposit in Chilicothe, was to make demand of payment, and to protest and give notice, on the 64th day, such demand and notice are sufficient.

The counsel on the part of the defendant, prayed the Court to instruct the jury, " that before the common principles of the law relating to the demand and notice necessary to charge the endorser, can be varied by a usage and custom of the plaintiffs, the jury must be satisfied that the defendant had personal knowledge of the usage or custom at the time he endorsed the note ; and, also, that before the plaintiffs can recover as the holder and endorser of a promissory note, they must prove their title to the proceeds by evidence of the endorsements on the note," which instructions were refused by the Court.

Upon this posture of the case, no questions arise for determination here, except such as grow out of the charge of the Court, or the instructions refused on the prayer of the defendant's (Mills') counsel. Whether the evidence was, in other respects, sufficient to establish the joint promise stated in the declaration, or the joint consideration of money lent, are matters not submitted to us upon the record, and were proper for argument to the jury.

The first point is, whether the notice sent to the defendant at Chilicothe, was sufficient to charge him as endorser. The Court was of opinion, that it was sufficient, if there was no other

1826.

Mills
v.
Bank of the
U. States.

Supposed de-
fects in the no-
tice.

note payable in the office at Chilicothe, drawn by Wood & Ebert, and endorsed by the defendant.

It is contended, that this opinion is erroneous, because the notice was fatally defective by reason of its not stating who was the holder, by reason of its misdescription of the date of the note, and by reason of its not stating that a demand had been made at the bank when the note was due. The first objection proceeds upon a doctrine which is not admitted to be correct; and no authority is produced to support it. No form of notice to an endorser has been prescribed by law. The whole object of it is to inform the party to whom it is sent, that payment has been refused by the maker; that he is considered liable; and that payment is expected of him. It is of no consequence to the endorser who is the holder, as he is equally bound by the notice, whomsoever he may be; and it is time enough for him to ascertain the true title of the holder, when he is called upon for payment.

The objection of misdescription may be disposed of in a few words. It cannot be for a moment maintained, that every variance, however immaterial, is fatal to the notice. It must be such a variance as conveys no sufficient knowledge to the party of the particular note which has been dishonoured. If it does not mislead him, if it conveys to him the real fact without any doubt, the variance cannot be material, either to guard his rights, or avoid his responsibility. In the present case, the misdescription was merely in the date. The sum, the

parties, the time and place of payment, and the
endorsement, were truly and accurately de-
scribed. The error, too, was apparent on the
face of the notice. The party was informed,
that on the 22d of September, a note endorsed
by him, payable in sixty days, was protested for
non-payment; and yet the note itself was stated
to be dated on the 20th of the same month, and,
of course, only two days before. Under these
circumstances, the Court laid down a rule most
favourable to the defendant. It directed the jury
to find the notice good, if there was no other note
payable in the office at Chilicothe, drawn by
Wood & Ebert, and endorsed by the defendant.
If there was no other note, how could the mis-
take of date possibly mislead the defendant? If
he had endorsed but one note for Wood & Ebert,
how could the notice fail to be full and unexcep-
tionable in fact?

The last objection to the notice is, that it does
not state that payment was demanded at the
bank when the note became due. It is certainly
not necessary that the notice should contain such
a formal allegation. It is sufficient that it states
the fact of non-payment of the note, and that
the holder looks to the endorser for indemnity.
Whether the demand was duly and regularly
made, is matter of evidence to be established at
the trial. If it be not legally made, no aver-
ment, however accurate, will help the case; and
a statement of non-payment, and notice, is, by
necessary implication, an assertion of right by
the holder, founded upon his having complied

1826.

Mills
v.
Bank of the
U. States.

with the requisitions of law against the endorser. In point of fact, in commercial cities, the general, if not universal, practice is, not to state in the notice the mode or place of demand, but the mere naked non-payment.

Upon the point, then, of notice, we think there is no error in the opinion of the Circuit Court.

Usage of the bank to demand payment and give notice on the fourth day of grace, binding on the parties, as part of the law of the contract, without proof of personal knowledge of the usage being brought home to them.

Another question is, whether the usage and custom of the bank, not to make demand of payment until the fourth day of grace, bound the defendant, unless he had personal knowledge of that usage and custom. There is no doubt, that according to the general rules of law, demand of payment ought to be made on the third day, and that it is too late if made on the fourth day of grace. But it has been decided by this Court, upon full consideration and argument, in the case of *Renner* v. *The Bank of Columbia*, (9 *Wheat. Rep.* 582.) that where a note is made for the purpose of being negotiated at a Bank, whose custom, known to the parties, it is to demand payment and give notice on the fourth day of grace, that custom forms a part of the law of such contract, at least so far as to bind their rights. In the present case, the Court is called upon to take one step farther ; and upon the principles and reasoning of the former case, it has come to the conclusion, that when a note is made payable or negotiable at a bank, whose invariable usage it is to demand payment, and give notice on the fourth day of grace, the parties are bound by that usage, whether they have a personal

knowledge of it, or not. In the case of such a note, the parties are presumed by implication to agree to be governed by the usage of the bank at which they have chosen to make the security itself negotiable.

Another question propounded by the defendant is, whether the plaintiffs were entitled to recover without establishing their title to the note, as holders by proof of the endorsements. There is no doubt, that by the general rule of law, such proof is indispensable on the part of the plaintiffs, unless it is waived by the other side. But in all such cases, the defendant may waive a rule introduced for his benefit; and such waiver may be implied from circumstances, as well as expressly given. It is in this view that the rule of the Circuit Court of Ohio of 1819, which has been referred to at the bar, deserves consideration. That rule declares, "that hereafter, in any actions brought upon bond, bill, or note it shall not be necessary for the plaintiffs on trial to prove the execution of the bond, bill, or note, unless the defendant shall have filed with his plea an affidavit, that such bond, bill, or note, was not executed by him." We think the present case falls completely within the purview of this rule. Its object was to prevent unnecessary expense and useless delays upon objections at trials, which were frivolous and unconnected with the merits. If the rule attempted to interfere with, or control the rules of evidence, it certainly could not be supported. But it attempts no such thing. It does not deny to the party

1826.

Mills
v.
Bank of the
U. States.

Rule of Court dispensing with proof of execution of note, &c. unless the defendant file with his plea an affidavit, denying the execution of the note.

1826.

Mills
v.
Bank of the
U. States.

the right to demand proof of the execution or endorsement of the note at the trial; but it requires him in effect, to give notice by affidavit, accompanying the plea, that he means to contest that fact under the issue. If the party gives no such notice, and files no such affidavit, it is on his own part a waiver of the right to contest the fact, or rather an admission that he does not mean to contest it. We see no hardship in such a rule. It subserves the purposes of justice, and prevents the accumulation of costs. It follows out, in an exemplary manner, that injunction of the Judiciary act of the 2d of March, 1793, ch. 22., which requires the Courts of the United States "to regulate the practice thereof, as shall be fit and necessary for the advancement of justice, and especially to that end to prevent delays in proceedings." As no affidavit accompanied the plea of the defendant in the present case, he had no right to insist upon the proof of the endorsements.

Another objection now urged against the judgment is, that the count demands 3,600 dollars only, and the jury gave damages amounting to 4,641 ʃdollars. But there is no error in this proceeding, since the *ad damnum* is for a larger sum. In all cases where interest, not stipulated for by the terms of the contract, is given by way of damages, the sum demanded in the declaration is less than the sum for which judgment is rendered. The plaintiffs may not recover more, as principal, than the sum demanded as such in

the declaration; but the jury have a right to add interest, by way of damages, for the delay.

Some other objections have been suggested at the bar, such as, that the jury had no right, without evidence, to presume that there was no other note of Wood & Ebert, in order to help the misdescription; and that the case proved was of several liabilities of the defendants, which would not support a declaration on a joint contract. These questions have been fully argued by counsel, but are not presented by the record in such a shape as to enable the Court to take cognizance of them.

Upon the whole, it is the opinion of the Court, that the judgment ought to be affirmed, with costs.