## CALEB C. GILBERT *vs.* LOUIS DENNIS.

It is a sufficient demand and refusal to constitute a dishonor of a note, if the maker, on the day it is due, calls on the holder at his place of business, where the note is, and declares that he is unable to pay it, and shall not pay it, and desires the holder to give notice to the indorser.

A notice given to the indorser of a note, in the forenoon of the day on which it becomes due, merely stating that the person giving notice holds the note, and that it is due and unpaid, and demanding payment, is not sufficient to charge the indorser.

ASSUMPSIT by the indorsee of a promissory note for $700, dated November 1st, 1837, signed by Charles E. Bowers, payable to the defendant, or order, in six months, and by him indorsed.

At the trial, before *Dewey* J. the plaintiff called a witness who testified, that on the morning of the 4th of May 1838, Bowers, the maker of the note, called at the plaintiff's store, where the note was, and stated that he was unable to pay it, and should not pay it, and wished the plaintiff to notify the defendant: That afterwards, at about 11 o'clock, A. M. of the same day, the witness left a notice at the defendant's dwelling-house, informing him that he held a note signed by C. E. Bowers, indorsed by the defendant, for $700, which was due that day and unpaid, and demanding payment of the defendant [See a copy of this notice, in the opinion of the court, *post.* p. 506.]

The defendant contended that the plaintiff had not proved sufficient demand on the promisor, or notice to the indorser The judge ruled, that the demand and notice were sufficient, but reserved the question for the consideration of the whole court.

This case was argued at the last March term.

*E. D. Sohier*, for the defendant.

*Bartlett*, for the plaintiff.

SHAW, C. J. In assumpsit by the indorsee against the indorser of a promissory note, the question is upon the sufficiency of the demand on the promisor, non-payment by him, and notice to the indorser. Any question, upon which the rights of

the holders of bills and notes depend, must be deemed a question of importance to the community, and deserves the fullest consideration.

The general rule is clear, that to hold an indorser liable, the law requires the holder, when the note becomes due, to present it to the promisor for payment, and if the promisor neglect or refuse thereupon to make payment, to give seasonable notice of the dishonor to the indorser. But in the application of the rule to actual cases, an infinite number of subordinate questions may arise ; as what amounts to a presentment, what a demand, what a refusal or neglect to pay ; the time when, the place where, the manner in which the presentment is to be made, what shall be deemed a substitute, what a waiver, what an excuse. So of notice to the indorser ; when it shall be given, in the same town, in another town or country, the place to which it shall be sent, his dwellinghouse, his counting house, to his agent, his executor in case of death ; the person by whom it may be given, the manner of giving it, the form and purport of the notice, whether written or verbal. Of these questions, two only arise in the present case : 1. Was a sufficient demand made on the promisor to constitute, on non-payment, a dishonor of the note by him ? 2. Was there such notice to the indorser of the fact of the dishonor of the note by the promisor, as to render him liable in character of indorser ?

1. The presentment. A note is payable at any reasonable time on demand, on the last day of grace, and if not then paid, it is dishonored, and notice may be immediately given to the indorser. *Staples* v. *Franklin Bank*, 1 Met. 43. *Shed* v. *Brett*, 1 Pick. 401. It appears by the report, in the present case, that on the last day of grace, the promisor went to the store of the holder, where the note was, and stated that he was unable to pay, and should not pay the note, and wished the plaintiff to notify the indorser. The court are of opinion that this was a sufficient demand and refusal to constitute a dishonor of the note. There are many cases, in which it is held that it is not necessary to produce and exhibit the note. As where a note is in terms, or by the tacit or express consent of the parties, pay

able at a bank, it is sufficient that the note is there ready to be given up on payment, should the promisor come to pay it. *State Bank* v. *Hurd*, 12 Mass. 172. *Whitwell* v. *Johnson*, 17 Mass. 449. *Saunderson* v. *Judge*, 2 H. B. 506. If the promisor does not go to the bank and pay the note, it is dishonored, and it would be but an idle ceremony, to take the note from the files and make a demand, when there is no one on whom to make it. . And should the promisor come and declare his inability to pay, his intention not to pay, and leave without payment, it is surely not less a dishonor, than if he had stayed away. The default of the promisor, in such cases, is his not paying the note at the bank ; and the default of the promisor, in whatever it consists, constitutes the dishonor of the note, upon which the indorsee, if duly notified, may be legally charged. Even under the law of tender, which is extremely strict, it is held that when the party, to whom a tender is to be made, declares that he will not accept it, an actual production and offer of the money, or other thing to be tendered, is unnecessary. In the present case, the plaintiff held the note, the promisor knew it, knew it was due, and instead of waiting for the holder to come to him, he went to the holder, declared by his conduct that he knew the note was due and payable, and that the holder had the note ready to be given up, and expected and had a right to expect payment of him as promisor ; and in anticipation of a presentment and express demand, declared that he could not pay the note, and departed without paying it. It does not appear that the holder did not request him to make payment ; and the circumstances are such as to warrant the inference that he did. The declaration of the promisor, that he could not pay, implies that he considered the holder as looking to him for payment, which is all that was necessary, and that he anticipated a more formal offer of the note and demand of payment, by a declaration which rendered it unnecessary.

2. But the more formidable objection to the plaintiff's right of recovering is, that the notice, which is recited in the report, did not inform the defendant, that demand had been made of the

promisor and payment refused, or in any other way, by express declaration or reasonable implication, inform the indorser that the note was in fact dishonored.

No particular form of notice is necessary. It may be either written or verbal. *Tindal* v. *Brown*, 1 T. R. 167. Nor will a mistake or misdescription of the note render the notice insufficient, if on the whole it cannot mislead the indorser, and if it so designates and distinguishes the note, as to leave no reasonable doubt in the mind of the indorser, what note was intended, and that it was the same with the note in suit. *Smith* v. *Whiting*, 12 Mass. 6. *Bank of U. States* v. *Carneal*, 2 Pet. 543.

But though no special form of notice is requisite, still in some form the fact to be notified is, that the note is dishonored by the default of the promisor ; and this may be done verbally or in writing, in any language which communicates the information to the indorser, in terms, or by reasonable implication. Indeed the same formula, in terms, may communicate this information or not, according to circumstances. Suppose a note payable at a bank, in terms, or by the agreement of parties, or tacit agreement arising from usage or otherwise ; it is the duty of the promisor to pay it at such bank on the last day of grace. The dishonor of such note by the promisor consists in the non-payment at the bank. If then, after the time of payment has elapsed, notice be given to the indorser, that the note is unpaid, it is notice that it is dishonored ; whereas, in case of a private holder, in regard to a note, which requires presentment and demand to fix the holder with a default, notice in the same words, that the note is unpaid, would not necessarily imply that it was dishonored, because that fact might be strictly true, though the note had never been presented, nor presentment waived or excused.

But whatever may be the form of the notice, whether written or verbal, we think the result of the decided cases is this ; that the notice should be such, that it will inform the indorser that the note has become due and been dishonored, and that the holder relies on the indorser for payment ; that this information

may be express, or may be inferred, by necessary implication, or reasonable intendment, from the language ; construing such language in reference to its accustomed meaning, when applied to similar subjects, and with reference to the terms of the note, the time and place at which the note is to be paid, as fixed by express or tacit agreement, or inferred from general or particular usages. It is not necessary to inform the indorser of the time, place or mode of presentment and demand, nor the means by which it was dishonored, nor matter of excuse or waiver. Whatever legally fixes the promisor with dishonor, is sufficient, on due notice given, to charge the indorser. If, for instance, the promisor has absconded before the note is due, without having made provision for its payment, so that no presentment and demand can be made, that is a dishonor, of which the holder may, immediately after the note has become due, notify the indorser ; or if the promisor has agreed that notice left at a particular place shall be deemed a good substitute, and, notwithstanding notice is so left, he does not make payment, this is likewise a dishonor.

But without considering further what constitutes a dishonor, it may be useful to examine more particularly, in reference to the present case, the authorities in relation to the effect and purport of the notice to be given to an indorser. The rule is laid down in general terms by the text writers, that notice is to be given of the fact of dishonor. Bayley states the duty of the holder. He is under an implied undertaking to every party to the bill or note, who would be entitled to bring an action on paying it, to present, in proper time, the one for acceptance and each for payment ; to allow no extra time for payment, and to give notice without delay, to such person, of a failure in the attempt to procure a proper acceptance or payment. Bayley on Bills (1st Amer. ed.) 124.

In general, it is incumbent on the holder to give notice of the dishonor to those persons to whom he means to resort for payment ; otherwise they will be discharged. Chitty on Bills, 393.

In *Tindal* v. *Brown*, 1 T. R. 167, & 2 T. R. 186, *note*, t was held that no particular form of notice was necessary, but

that such notice must come from the holder of the bill or note, or some party to it, and that mere knowledge of the fact of non-payment, coming to the indorser from any other source, would not be sufficient. It ought to purport that the holder looks to him for payment. The court do not say, in terms, that the notice must directly, or by implication, state the fact of dishonor ; but it is implied. The case decides that the holder must do an act, electing to assert his right to recover the note of the indorser, which right can only exist in case of a dishonor of the promisor. The case did not call for a decision as to what must be the tenor or purport of the notice, as to the fact of dishonor. It ought, said Mr. Justice Buller, to purport that the holder looks to him, (the indorser,) for payment. In regard to this it may be remarked, that when notice is given, by the holder to the indorser, of the dishonor of a note, it necessarily implies that he looks to him for payment. That is the natural, and may in general be regarded as the necessary, inference from the fact of giving such notice.

This question seems not to have arisen in England, until a recent period ; but since the point has been started, there have been a series of decisions on the subject. The first was *Hartley* v. *Case*, 4 Barn. & Cres. 339. *S. C.* 6 Dowl. & Ryl. 505. The notice from the holder was, " I am desired to apply to you for the payment of the sum of £150, due to myself on a draft drawn by Mr. Case on Mr. Case, which I hope you will on receipt discharge, to prevent the necessity of law proceedings, which otherwise will immediately take place." The court held it insufficient, because it did not apprize the party of the fact of dishonor. They said, the language used must be such as to convey notice to the party what the bill is, and that payment of it has been refused by the acceptor. This was in 1825.

The next case was that of *Solarte* v. *Palmer*. On a trial before Lord Tenterden, he expressed an opinion, that the notice was insufficient. A bill of exceptions was taken, and the case brought before the Exchequer Chamber, who confirmed the decision. 7 Bing. 530. 5 Moore & Payne, 475. 1 Crompt. & Jerv. 417. 1 Tyrw. 371 On appeal to the House of Lords,

the judgment was affirmed.  8 Bligh N. R. 874.  *S. C.* 2 Clark & Fin. 93.  1 Bing. N. R. 194.  1 Scott, 1.

The action was brought by the assignees of a bankrupt, and the notice was given by the attorneys of the assignees.  It described the bill, and stated that it had been put into their hands by the assignees, with directions to take legal measures for the recovery thereof, unless immediately paid.

In giving judgment in the Exchequer Chamber, Tindal, C. J. states the rule to be, that the notice does not require the formality of a regular protest, but it should at least inform the party, to whom it is addressed, either in express terms or by necessary implication, that the bill has been dishonored, and that the holder looks to him for payment.  This was decided in the House of Lords, June 1834.

The next case, I believe, is that of *Boulton* v. *Welsh*, 3 Bing. N. R. 688.  *S. C.* 4 Scott, 425.  The notice to the indorser was thus :  "The promissory note for £ 200, drawn by &c., dated 18th July last, payable three months after date, and indorsed by you, became due yesterday, and is returned to me unpaid.  I therefore give you notice thereof, and request you will let me have the amount thereof forthwith."  It was strongly urged that the words *returned unpaid* would import to the understanding of mercantile men, that the note had been dishonored.  But the court held themselves bound by the case of *Solarte* v. *Palmer*, and, believing this case to be within it, held the notice insufficient, although all the judges expressed their regret at the result.  But they state the rule of law, as it had before been stated, that the notice should show a presentment to the maker, a demand of payment, and a refusal.  As to any thing further than the general rule, this case is of no authority, unless in a case where the form of notice is precisely the same.  Whether in such case, the words *returned unpaid* would import the fact of dishonor, would depend much upon the usage of each mercantile community, in which they should be used, and the conventional use and meaning of particular forms of expression used in such community.  This was a decision of the court of common pleas, Easter term, 1837.

About the same time was decided, in the court of exchequer, the case of *Hedger* v. *Steavenson,* 2 Mees. & Welsb. 799, where the attorney addressed a letter to the defendant, informing him that his note, describing it, became due the day before, and had been returned unpaid, and requested him to remit the amount, with 1s. 6d. noting ; and the notice was held to be good.

The case of *Messenger* v. *Southey,* 1 Man. & Granger, 76, and 1 Scott N. R. 180, was decided in the court of common pleas, in 1840. The notice was as follows. " This is to inform you that the bill I took of you for 15l. 2s. 6d. is not took up, and 4s. 6d. expense ; and the money I must pay immediately." Held it was insufficient, because it did not state or intimate, by intelligible inference, that the note had been dishonored.

About the same time, the case of *Lewis* v. *Gompertz,* 6 Mees. & Welsb. 399, came before the court of exchequer. The notice from the holder to the indorser stated that the bill bearing his indorsement had been presented to the acceptor, and returned dishonored, " and now lies overdue and unpaid with me, as above, of which I give you notice." This was held sufficient, as giving all the requisite information, although it did not, in terms, require payment of the indorser.

The remarks of Mr. Baron Parke, in this case, are well worthy of consideration, as showing the extent to which the court considered the authority of *Solarte* v. *Palmer* as going, and the qualifications with which it is to be taken.

In *Grugeon* v. *Smith,* 6 Adolph. & Ellis, 499, the notice to the drawer of a bill was, that the bill had been returned with charges ; and the immediate attention of the drawer to it was requested. · This was held sufficient, as implying a demand and refusal, and noting for non-payment.

See *Houlditch* v. *Cauty,* 4 Bing. N. R. 411. *S. C.* 6 Scott, 209. *Strange* v. *Price,* 10 Adolph. & Ellis, 125. *Burgh* v. *Legge,* 5 Mees. & Welsb. 418. *Shelton* v. *Brothwaite,* 7 Mees. & Welsb. 436. *Cooke* v. *French,* 3 Perry & Davison, 596. *S. C.* 10 Adolph. & Ellis, 131, *note.*

These are all recent cases, bearing more or less directly up-

Gilbert v. Dennis.

on the question, but do not essentially vary the result.   Where, in the notice, it is stated that the bill has been noted, or return-ed with charges of protest, or the like, it is held to be notice, by reasonable implication, of the fact of dishonor.

It was contended at the argument, that although it has been settled by recent authorities in England, that the notice to the indorser must state the fact of dishonor, yet that the American authorities, would show that it was unnecessary.   It becomes therefore necessary to examine and compare them.

*Mills in error* v. *U. S. Bank*, 11 Wheat. 431.   The note was in terms payable at the branch of the U. S. Bank at Chili-cothe, and indorsed by the original defendant, plaintiff in error. It was demanded at the proper time, at the bank, but there being no person there ready and willing to pay the same, it was immediately protested, and notice given to the defendants.   The notice described the note by the date and amount, the time and place of payment, and as a note on which the defendant was in-dorser, and stated thus ; "which has been protested for non-payment and the holders thereof look to you : "   (Signed by the mayor of Chilicothe acting as mayor, and addressed to the de-fendant.)   It was objected that the notice was defective, be-cause it did not state who was the holder ; because there was a misdescription of the date ; and because it did not state that a demand had been made at the bank, when the note was due. As to the misdescription, it was held to be of no importance, if there was no other note to which it could apply, if it was so described as to indicate the note in suit, and if it did not mislead.

As to the sufficiency of the notice, the opinion was deliv-ered by Mr. Justice Story.   Some particular expressions, taken alone, would seem to warrant the position for which it is cited.   But taking the whole together, and in reference to the case then before the court, we think it is not opposed to the rule as stated in the English cases.   Speaking in reference to the first objection, that the notice did not state who was the holder, the judge says, "no form of notice to an indorser has been prescribed by law.   The whole object of it is to inform the party, to whom it is sent, that payment has been refused by

the maker ; that he is considered liable ; and that payment is expected of him."

In reference to the objection, that it did not state that payment was demanded at the bank, when the note became due, he says, " it is certainly not necessary that the notice should con tain such a formal allegation. It is sufficient that it states the fact of non-payment of the note, and that the holder looks to the indorser for indemnity." He then speaks of the fact of presentment and demand, as matter of fact to be proved, and adds, " a statement of non-payment and notice is, by necessary implication, an assertion of right by the holder, founded on his having complied with the requisitions of law against the in-dorser." One of these requisitions is, of course, presentment and demand. And the learned judge concludes, upon this point, by adding, that " in point of fact the general, if not universal practice is, not to state in the notice the mode or place of de-mand, but the mere naked non-payment."

In the case then before the court, the notice contained a full and precise statement of the presentment, demand, and non-pay-ment, by the maker. The objection with which the court were dealing was, that the notice did not specify the time and place of demand. The answer made was, that such particularity was unnecessary, and that it is sufficient that it states the fact of non-payment. Applied to the facts of that case, it may be con-strued to mean, non-payment after due presentment. So, when the learned judge speaks of the practice of commercial cities, he speaks of notice of the mere naked non-payment, in contra-distinction to stating, in the notice, the mode and place of de-mand. That such is the meaning, may be inferred from the passage before cited, in which he speaks of the object of the notice, which is to inform the indorser that payment has been refused by the maker. Refusal implies non-payment on de-mand, or under such circumstances as render a presentment and demand unnecessary. Indeed in many cases, simple notice of non-payment is notice of dishonor ; as where the note is in terms, or by usage or special agreement, payable at a bank, a notice stating the date and terms of the note, showing that it has

become due, and averring that it is unpaid, is equivalent to an averment that it is dishonored.

In *Smith* v. *Whiting*, 12 Mass. 6, no question was raised as to the sufficiency of the notice. It was notice from a bank. It described the note as due and unpaid ; and by usage it was held to be payable at the bank. Of course it was dishonored, by not being paid at the bank by the maker.

So in *State Bank* v. *Hurd*, 12 Mass. 172, notice was left at a place agreed by the parties as a substitute for notice at the house or place of business of the maker ; and it was held sufficient — being equivalent to a more formal demand ; and failure of the promisor to pay, on such notice, rendered the indorser liable.

The case of *Bank of Rochester* v. *Gould*, 9 Wend. 279, is a case of mere misdescription. The notice to the indorser stated expressly that the note had been protested for non-payment ; and the only question was, whether it was well described. It therefore does not affect the present question.

The case of *Bank of United States* v. *Carneal*, 2 Pet. 543, may be considered as throwing some light on the subject of inquiry. It is held, that when the note is payable at a bank, and the bank is itself the holder of it, no demand is necessary. It is the duty of the maker to go to the bank within the usual hours of business and pay it ; and if he fail to do so, the note is dishonored. Towards the close of the opinion, given by Mr. Justice Story, it is stated thus : "A suggestion has been made a the bar, that a letter to the indorser, stating the demand and dishonor of the note, is not sufficient, unless the party sending it also informs the indorser that he is looked to for payment. But where such notice is sent by the holder, or by his order, it necessarily implies such responsibility over. The purpose may be reasonably inferred from the nature of the notice."

We have thus attempted, at the risk of being somewhat tedious, to ascertain what the true rule is, upon this subject, on account of the extreme importance of certainty and uniformity in the rules of law applicable to the rights and duties of holders and other parties to notes and bills of exchange. And we take that

rule to be, that as an indorser is liable only conditionally for the payment, in case of a dishonor of the note at its maturity by the maker, and notice thereof to the indorser ; in order to charge him, notice of such dishonor must be given him, by the holder or his agent, or some party to the bill ; that mere notice of non-payment, which does not express or imply notice of dishonor, is not such notice as will render the indorser liable.

In order to apply the rule, thus stated, to the present case, it will be necessary to look at the facts stated in the report. It appears that the presentment and demand on the promisor were made on the morning of the day on which the note fell due. Afterwards, at about 11 o'clock, the plaintiff caused a written notice to be left at the defendant's dwellinghouse, of which the following is a copy : "Boston, May 4, 1838. Mr. Louis Dennis. Sir : I have a note signed by C. E. Bowers and in-dorsed by you for seven hundred dollars, which is due this day and unpaid ; payment is demanded of you. C. C. GILBERT."

This notice comes from an individual, not from a bank. It was delivered at 11, A. M. There would then be no default and no dishonor, unless a demand had been made on the prom-isor. An averment, therefore, that it was unpaid, did not, by necessary implication or reasonable intendment, amount to an averment or intimation that payment had been demanded and refused, or that the note had been otherwise dishonored. The court are therefore of opinion, that the notice was not sufficient to render the indorser legally liable.*

---

* See *Ransom* v. *Mack*, 2 Hill's (N. Y.) Rep. 587.