Mr. Chief Justice Sharkey
delivered the opinion of the court.
The only question in this case is, Was the notice sufficient to charge the indorser of a bill of exchange 1 The bill was dated the 26th of November, 1836, and was payable four months after date. It matured, therefore, on the 29th of March, and on that day was protested. But the notice of protest bears date the 26th of March, and notifies the indorser that on that day the bill had been protested for non-payment, and that the holder looked to him for payment.
To my mind the conclusion seems irresistible, that this notice was insufficient to charge the.indorser.
' The first duty of the holder of a bill of exchange, is to have it presented for payment on the very day it becomes due, and, if it is not paid, to have it protested. Story on Bills, § 324, 378.
His next duty is, to give due notice of non-payment immedi *387 ately. Ib. 381. The law is very exacting on this subject; presentment must be made and payment demanded on the third day of grace — a day sooner or a day later will not do. Equal strictness must be observed in giving the notice. That is the medium of information to the indorser. His undertaking is conditional, that he will pay if the drawee does not, provided payment be demanded, and refused at the maturity of the bill, and due notice thereof be given him, and the holder must strictly, perform his duty. Any variation from it, discharges the in-dorser. A defective demand is not cured by a regular notice; nor is a defective notice cured by a proper demand.
The notice is the important thing to the indorser. It informs him of his liability, that the holder has performed his condition. To notify means to impart knowledge, knowledge that payment was demanded and refused at the right time. When we derive a knowledge of facts from information, we rely on that information as true. Will false information inform us of truth 1 What signifies a notice that informs the indorser that the holder has not done his duty ? This is in effect that notice, for unless the indorser was bound to disbelieve it, he was thereby admonished that the demand was made too soon, — notified that the bill had not been dishonored, for that is the legal effect of such a notice, and in this instance it is purely a question of law. And this it did without taxing his recollection as to the precise time of payment ; for on its face it states that the draft was dated the 26th of November, 1836, and was protested on the 26th of March, 1837.
We arrive at the principle which should govern. It must contain in substance a description of the instrument, either in express terms, or by natural or necessary implication from the language used. It must contain an assertion of due presentment and dishonor, and that the holder looks to the party to whom notice is sent for indemnity. Story on Bills, 390. Here are three requisites to a good notice. If it lack any of them, is it still good! If so, they are not necessary to a good notice, and the author was mistaken. According to the rule here laid down, a notice which does not contain an assertion of due pre *388 sentment and dishonor is worthless. This is the important fact to be communicated to the indorser. Without it, he is not liable. That a notice must contain the assertion that the bill has been duly presented and dishonored, is well settled. 4 B. & C. 339; 1 Cro. Jac. 419; Solarte v. Palmer, 7 Bing. 530. Is a notice which contains a false statement in this particular, better than one in which such statement is omitted? It would seem not. The assertion is not matter of form, but of substance. It seems strange that an indorser is to be held liable on the strength of notice of a fact, which fact, if true, would discharge him. The notice is his only means of deriving the information. If it is true, he is discharged; if it is false, he is liable.
In this instance it will not be denied but what the sufficiency of the notice is a question of law. We are to judge the instrument from its face. It states a fact on which the law is to pronounce. As a question of law then, is it sufficient to notify an indorser of non-payment before the maturity of the bill ? That is the sole question. It will not do to say that it was a sufficient notice to put him on his guard. The law does not hold him liable merely because he is put on his guard. If so, notice would be unnecessary in all cases where the maker’s solvency was doubtful, that being a circumstance calculated to keep the indorser on his guard. But this notice was the very thing to put him off his guard. He was hound to believe it contained a true statement, and if so, he was discharged.
The cases relied on as authority by the defendants in error, are very clearly distinguished from this. They are decisions made on a mere misdescription of the instrument, when there was no error in the time of giving the notice. In these cases, it was a question of identity. An indorser may be able to identify a bill which is misdescribed in a slight particular, because he must be supposed to remember the notes or bills indorsed by him. A misdescription of a thing within his knowledge, in one particular, if it be correct in others, does not mislead him. His mind will rest at once on the thing intended to be described. But a misdescription of an independent fact, not within his *389 knowledge, but relating solely to an act performed by another, cannot have the effect to lead his mind to detect an error in the description. By a false statement in reference to a matter of which he knows nothing, his mind is not led to the truth. He cannot know from a certificate that a certain thing was done on a particular day, that in truth it was done on a different day.
The cases of Mills v. The Bank of the United States, 11 Wheat. 431, and Smith v. Whiting, 12 Mass. R. 6, are both of this description. In the first case, the note was properly protested, and notice duly given on the 22d of September, but the note was described in the notice as bearing date on the 20th of September, payable in sixty days, when in truth its date was the 20th of July; and it was in proof that the party had no other note in bank. This notice, under the circumstances, was holden to be sufficient, because the party could not be misled by it. The court said that a variance to be fatal must be such as conveys no sufficient knowledge to the party of the particular note which has been dishonored. It is evident the court had in view nothing but the question of identity. “ If it does not mislead him,” said the court, “ if it conveys to him the real fact without any doubt, the variance cannot be material.” On this language alone the notice before us would be bad. It does not convey to the indorser a fact without any doubt, which would make him liable, and it must, of necessity, have misled him.
In the case of Smith v. Whiting, the .notice contained an error in stating that the note was due on the 3d, when it was due on the 6th, and also in the name of the maker, but the notice was properly given on the 6th. And it was also in proof that the party had no other note in bank. He could not be mistaken as to the note intended to be described, and the notice was given on the proper day.
In the case of The Ontario Bank v. Petrie, 3 Wend. 456, the notice was correctly dated on the last day of grace, but it stated the note “was last evening protested for non-payment.” If this had been true, it was protested too soon, and the indorser was discharged: and it would be an authority in the present case, but it was decided on the authority of Reedy v. Seixas, 2 Johns. *390 Cas. 337, and Smith v. Whiting, without any notice of the just distinction between a mere misdescription of the instrument, on which those cases turned, and the true question then before the court. It was a mistaken application of authorities. But the case of The Ontario Bank v. Petrie has been since expressly overruled by the case of Ransom v. Mack, 2 Hill, 595, and is no longer authority in New York.
In all these cases it was left to the jury to say, whether the indorsers were “ misled,” meaning misled as to the identity of the note. Even taking this to be the true doctrine, applicable to the case before us, it could not hold the indorser liable. He was obliged to be misled, if he believed the statement in the notice. The law must presume that parties to negotiable paper will know when it matures; and knowing this, they are certainly misled, if informed that demand was made three days too soon. Nothing could be more deceptive than such a statement, if it be untrue.
The case of Ransom v. Mack contains the true doctrine. The notice informed the indorser that demand had been made on the wrong day, as in this case. The court decided that'it was insufficient, and that, whether sufficient or not, was a question of law. Any other decision would seem to me to subvert the rule, which requires demand to be made on the third day of grace. Surely a notice which admonishes a party that demand has been made before that time, cannot be sustained, unless it be because it would be good demand, if it had been made at the time stated. I do not understand how it is, that a notice would be bad if true, but being false, it is good. If it be sufficient to say to an indorser, that the note with his indorsement has been protested three days before it matured, it is also sufficient to say the same thing three months before; or three, or six months afterwards, when it is too late for him to protect himself.
I think, therefore, that the court erred in charging the jury “ that notice to an indorser, in which there is an error in stating either the date of the note, the day it became due, the day it was protested, the maker’s name, or the amount of the note, is *391 sufficient, the note being in other respects sufficiently described, so that the indorser could not be misled by it,” and that a new trial should be granted.
Mr. Justice Thachek concurred in the foregoing opinion.