Burgess v. Vreeland.

CITED *in State* v. *Seymour,* 6 *Vr.* 59.

## CALEB A. BURGESS v. JACOB VREELAND.

1. Proof that a note was presented for payment, and was protested for non-payment, is sufficient proof that payment was refused.

2. The contents of a notice of protest may be proved by parol.

3. Proof that notice of protest was given without proof of the contents is *prima facie* evidence that the notice was in due form, the defendant having it in his power to produce the notice.

4. It is not necessary in a notice of protest to state in terms that the note was presented for payment, or that the holder looks to the endorser for payment: it is enough if these appear by implication.

5. Notice of protest must, when sent by mail, be placed in the post office in time to go by the mail of the day after dishonor that closes after the commencement of usual business hours, and a reasonable time to prepare the notice in such business hours. *Semble,* that a mail closing at half past nine in the morning would be before usual business hours.

6. To hold an endorser, it is necessary to show *positively* that the notice was deposited in time for the proper mail of the next day.

This was an action brought in this court against the defendant, as endorser of two promissory notes, drawn by George Wood, treas., to defendant's order, and endorsed by him. Upon the trial, which was held at the Hudson circuit before the Chief Justice, the defendant moved, at the closing of the plaintiff's testimony, to nonsuit the plaintiff, because he had not

given sufficient evidence of the dishonor of the notes and of notice of nonpayment to make the defendant liable as endorser. The court refused to order the nonsuit at the circuit, and reserved the question, giving the defendant leave to move to set aside the verdict and to have a nonsuit entered at bar.

The cause was heard on a motion to set aside the verdict and enter a judgment of nonsuit upon a statement of facts, which appear in full in the opinion of the court.

Argued before the CHIEF JUSTICE and Justices ELMER and HAINES, by Mr. *Scudder* and *Gilchrist*, for defendant, and Mr. *Vroom*, for plaintiff.

*Gilchrist*, for rule.

The plaintiff should have been nonsuited at the circuit.

1. There was no proof of refusal to pay the notes on presentment—this is necessary. *Story on Prom. Notes*, § 348 and 351, *n.* 3 ; 1 *South.* 24, *Ferris* v. *Saxton ;* 3 *Bing. N. C.* 688, *Bolton* v. *Webb.*

2. Notice was not mailed in time. 2 *Harr.* 487, *Bank* v. *Shipman.*

No proof that either notice was in time for the mail.

3. Notices sent did not contain the legal requisites of a notice of protest ; they did not state that payment had been refused upon presentment, or that the holder looked to the endorser for payment. *Story on Notes*, § 348 ; 1 *Term R.* 165, *Tindall* v. *Brown ;* 1 *South.* 19, *Ferris* v. *Saxton ;* 7 *Halst.* 268, *Paterson Bank* v. *Butler ;* 7 *Bing.* 533 ; 1 *Bing. N. C.* 164 ; *Chitty on Bills* (10th *Am. ed.*) 470, *n.* and 468, *note ;* 10 *Ad. & Ell.* 125, *Strange* v. *Price.*

*Vroom*, against rule.

1. There need not be express proof of refusal to pay ; proof of presentment and protest is sufficient : the protest could only be for nonpayment.

2. As to the form of notice, it is not necessary that it should state that the holder looks to endorser for payment.

No particular form of notice of dishonor is necessary ; it is enough if it informs the endorser that the note was presented

and dishonored.　*Chitty on Bills* 466 (10*th Am. ed.*);　10 *Man.* 1, *Lenox* v. *Leveret;* 4 *Mason* 336, *Wallace* v. *Agry;* 1 *John. C.* 107, *Kenworthy* v. *Hopkins;* 3 *Kent's Com.* 108 (6*th ed.*)

3. The notices were sent in time. Notice of dishonor of first note was mailed July 23, there is no proof as to the hour; of the second note was mailed on the right day, before 4 o'clock P. M.

The rule laid down in *The Sussex Bank* v. *Shipman*, 2 *Harr.* 487, is a very strict one. Since that case, the rule has been modified to a more reasonable requisition. It is necessary that it be mailed the next day, but not in time for the mail of that day.　3 *Kent's Com.* 106–7 (6*th ed.*);　24 *Maine* 458, *Chisk* v. *Pillsbury;* 3 *Cushing* 162, *Blanchard* v. *Stevens;* 13 *Ald.* 106, *Barkey* v. *Earle.*

*Scudder*, in reply.

There is no proof of either refusal to pay, or what were the contents of the notice of protest. All was done by clerks, and no memorandum of one or copy of the other kept or produced. Whatever may be held to be the requisites of a notice, there should be some evidence of its contents, that the court may look into it, and decide its sufficiency.　1 *Chitty Gen. Pr.* 502 and 503;　4 *Pet. Abr.* 445.

All the cases agree that payment must not only be demanded, but refused.

As to the time when notice of protest by mail must be sent, it is settled that it must go by the next practicable post or by the first practicable mail that leaves after usual business hours. 2 *Penn.* 917, *Halsey* v. *Larmon;* 2 *Greenl. Ev.* § 187.

Then the hour of the day when notice was put in post office does not appear; nor does it appear when the mail of that day left for the post office of the defendant.

There is a total want of that evidence which is necessary to charge the endorser.

Opinion of the court by the CHIEF JUSTICE.

This action was brought against the defendant, as the en-

VOL. IV.　　　　E

dorser of two promissory notes, for $1000 each, dated at New York, December 19, 1850. Both notes are drawn by George Wood, treasurer, payable to the order of the defendant, and by him endorsed. The one note is payable at seven months, the other at six months, after date. Upon the trial, the fact of the endorsement of the notes by the defendant was duly proved. It was further proved, by evidence taken under a commission, that the note No. 1, on the 22d day of July, 1851, the day of its maturity, between the hours of three and five o'clock, was presented, by a clerk of the notary, at the place of business of the maker, in the city of New York; in the absence of the maker to a man in charge thereof, and payment demanded, which was refused. Notice of protest was put into the post office in the city of New York, by the clerk of the attorney, on the 23d of July, 1851, addressed to the defendant, at his residence at Rocky Hill, Somerset county, New Jersey.

Note No. 2, on the 21st of June, 1851, the day of its maturity, between the hours of three and five o'clock in the afternoon, was presented, by the notary, at the place of business of the maker in the city of New York, and exhibited to a person in the employ of the maker, and payment demanded. On the 23d of June, (the 22d being Sunday) notice of protest was delivered, by the clerk of the notary, to the plaintiff; and on the same day, as the witness thinks, between twelve and four o'clock, was mailed to the defendant, at his place of residence. Witness thinks it was mailed before the southern mail closed, but made no inquiry as to the time of day the mail left for Rocky Hill. Note No. 2 answers the description of the note mentioned in the notice of protest. The notice of protest states that a note for $1000, made by George Wood, treasurer, was protested for non-payment. Upon this evidence being given, the defendant moved for a nonsuit, on the ground that the evidence was not sufficient to sustain an action against the endorser upon either of the notes. The motion was overruled, with leave to the defendant to renew the application to the court at bar upon the coming in of the *postea*.

The application for a nonsuit rests upon an alleged defect of the plaintiff's evidence in several particulars.

I. It is insisted that, in regard to the second note, there is no evidence of *a refusal to pay* upon presentment and demand of payment.

The evidence shows that, on the third day of grace, the note was protested by a notary public ; that, on that day, it was duly presented at the place of business of the maker, and payment demanded. It is not, indeed, averred in terms by the witness that payment was refused on presentment ; but that fact is sufficiently shown, if there be due proof that the note was presented and protested for nonpayment, and that due notice of protest was given to the endorser.

II. But it is insisted that there is no evidence that due notice of the dishonor of either note was given to the endorser. As to note No. 1, there was no evidence whatever of the contents of the notice ; and as to the second note, though the witness states the contents of the notice, as far as he recollects them, the contents of the notice (as proved) it is insisted are insufficient to hold the endorser accountable.

The evidence of the notary and his clerk, in regard to note No. 1, is, that the note was protested for nonpayment, and that the notice of protest was put into the post office, addressed to the defendant at his place of residence. No copy of the notice was exhibited. There was no further proof of its contents. The evidence was taken under a commission in the city of New York, and no cross interrogatories were exhibited.

It is usual, and certainly advisable, to offer in evidence a copy of the notice of the dishonor of a note, but it is not necessary that the notice should be in writing. It may be verbal ; and when a written notice is given, the contents of the notice, as well as the fact of notice, may be proved by parol.

Proof of the fact, that notice of dishonor was given, is at least *prima facie* evidence that the notice was in proper form. The witness is open to cross-examination. The notice, if written, is in the hands of the defendant, and it is incumbent on him, if he relies on that fact, to show that the form of the notice was defective.

In regard to the second note, the witness, on being cross-examined, stated that the note declared on, which was exhib-

ited to the witness, answered the description of the note mentioned in the notice of protest. The notice stated that the note was protested for nonpayment. It was signed —— Bloomfield, the witness being unable to recollect the christian name. It was further shown that William Bloomfield, the notary, had protested the note; that the notice of protest' was delivered by his clerk to the plaintiff, and 'that, by a clerk of the plaintiff, it was enclosed and mailed to the defendant. It is objected that the proof does not show that the notice contained the essential requisites, that it was duly presented to the maker at its maturity. But it is neither necessary nor usual to state formally that the note has been presented to the maker for payment. The usual form of the notice is simply that the note has been protested for nonpayment. That involves the idea that it was presented for payment. *Mills* v. *U. S. Bank*, 11 *Wheat.* 431.

It is further objected that the notice did not state that the holder looked to the endorser for reimbursement and indemnity. The object of the notice is to apprize the endorser that the note is dishonored, and that he is looked to for payment. It is not necessary to state in terms that the holder looks to the endorser for indemnity. It is enough if that fact appears by just and natural implication. The modern cases agree that the fact of giving notice to the endorser that the note is dishonored for nonpayment, is in itself a sufficient notice that the endorser is looked to for payment. *Lewis* v. *Gomperty*, 6 *Mees. & W.* 399; *Cooke* v. *French*, 10 *Ad. & E.* 131, note; *Bank of U. S.* v. *Carneal*, 2 *Pet.* 543; *Story on Prom. Notes*, § 353, 334; *Story on Bills*, § 301, 390, n.

It is further objected that the notice was not mailed in time to the endorser. The proof is, that note No. 1 was protested on the 22d day of July, and the notice put in the post office in the city of New York the next day; that note No. 2 was protested on the 21st of June, 1851, and, the next day being Sunday, the notice was put in the post office on Monday after twelve o'clock, but, as the witness thinks, not after four o'clock P. M. He made no inquiries, nor is there any proof at what hour the mail left for Rocky Hill, the residence of the en-

dorser. The rule is, that when notice of nonpayment is sent by mail, it must be mailed or placed in the post office, either on the third day of grace or on the day after, in time to be forwarded by the mail of that day, unless the mail depart at an early hour in the morning, before the party with reasonable diligence, could mail his notice. It was so held by this court in the *Sussex Bank* v. *Baldwin and Shipman*, 2 *Harr.* 487. The leading cases upon the subject are fully reviewed in the opinion of Mr. Justice Dayton, delivered in that cause. This case falls directly within that authority. There is no proof whatever that either notice was put in the post office in time for the mail of the day after the dishonor of the note. On the trial it was thought a proper subject of inquiry at bar, whether the rule requiring notice to be put into the post office on the day after the protest, in time for the mail of that day, had not undergone some modification since the decision of the case of the *Sussex Bank* v. *Baldwin*, and therefore the motion for a nonsuit was denied. Judge Kent appears to have entertained the opinion that the weight of authority, both in England and in this country, was in favor of a change in the rule. In the earlier editions of his Commentaries, he states the rule thus : " According to the modern doctrine, the notice must be given by the first direct and regular conveyance. This means the first convenient and practicable mail that goes on the day next to the third day of grace ; so that if the third day of grace be on Thursday, and the drawer or endorser reside out of town, the notice may, indeed, be sent on Thursday, but must be sent by the *mail that goes on Friday.*" 3 *Kent's Com.* (2d ed.) 105, 106. This accords strictly with the rule adopted by this court in the *Sussex Bank* v. *Baldwin*, and as laid down by the approved elementary writers. *Chitty on Bills* (8th ed.) 514, 515 ; *Bayley on Bills* (2d Am. ed.) 262. And the rule does not appear to have been relaxed by the courts of the state of New York. *Smelly* v. *Utica Bank*, 20 *J. R.* 352 ; *Mead* v. *Engs*, 5 *Cowen* 303 ; *Howard* v. *Ives*, 1 *Hill* 263.

In the more recent edition of Kent's Commentaries, the rule is stated thus: " According to the modern doctrine, the notice

must be given by the first direct and regular conveyance.    *
*    *    This means the first *mail that goes after the day
next to the third day of grace;* so that if the third day of
grace be on Thursday, and the drawer or endorser reside out
of town, the notice may indeed, be sent on Thursday, but must
be put into the post office or mailed on *Friday, so as to be for
warded as soon as possible thereafter."*   3 *Kent's Com.* (6th ed.)
105, 106.

And in note *a* to page 106, the author further states, that
the rule was laid down too strictly in *Lenox* v. *Roberts*, 2
*Wheaton* 373; *viz.* that notice of dishonor must be put into the
post office early enough to be sent by the mail of the day suc-
ceeding the last day of grace; and that the rule, as it is now
generally and best understood in England and in the commer-
cial part of the United States, is, that notice put into the post
office on the next day after the third day of grace, *at any time
of the day* so as to be ready for the first mail that goes *thereafter*,
is due notice, though it may not be mailed in season to go by
the mail of *the day after the default.*   This is certainly very
high authority on a question of commercial law, and the change
in the statement of the principle shows that it was made de-
liberately and upon examination and reflection.   Yet it is worthy
of notice that this authority was before this court at the time
of the decision in the *Sussex Bank* v. *Baldwin.*   It has since
undergone the examination of other American courts without
securing their concurrence or approbation.   *Donnes* v. *The
Planters Bank*, 1 *Smedes & Marshall* 261 ; *Wemple* v. *Danger-
fied*, 2 *Ib.* 445.   In both these cases the rule was held to be,
that the notice must be in the post office in time to go by the
mail of the day next after the day of protest, if a mail goes on
that day, unless it leaves at an unreasonably early hour.

In *Beckwith* v. *Smith*, 22 *Maine* 155, it was held that the
notice must be in the post office in season to be carried by the
mail of the next day after the note is dishonored.

In *Chisk* v. *Pillsbury*, 24 *Maine* 458, it was held by a ma-
jority of the court, that it is sufficient if notice of the dishonor
of a promissory note be put into the mail within a convenient

time after the commencement of business on the day succeeding that of the dishonor. In that case the note was protested in the city of New York on the 29th of November, and on the same day notice was given to the agent of the plaintiff; on the next day notice of dishonor, directed to the defendant, at his residence in Bangor, Maine, was put into the post office in the city of New York, between twelve o'clock at noon and eight o'clock at night. So far the facts correspond precisely with the facts of the present case. But it was further proved in the case that there was but one daily mail from the city of New York by which letters would go to Bangor; that this mail closed at six, and left the city at seven in the morning, which in the month of November would be soon after daylight. The counsel of the defendant insisted that the notice was not mailed in season; that it must be put into the post office in season to go by the mail of the next day after dishonor, however early it might depart. And of this opinion was Shepley, J., who, in an elaborate opinion after an able review of the cases, held that the strictest rule, requiring in all cases that the notice should be mailed in season for the mail of the day next after the dishonor of the note, was sustained by the weight of the authority. And it is remarkable that Justice Kent, notwithstanding the opinion previously expressed, that the party had the whole of the day following the third day of grace in which to mail notice of protest, concludes the note to which allusion has been made by saying, that he apprehends that the weight of authority is in favor of the view of the rule as taken by Mr. Justice Shepley. But the majority of the court in *Chisk* v. *Pillsbury* held that the rule does not require that the notice should be mailed in season to go by the mail of the next day, however early it might close, but that it extends to the allowance of a convenient time after the commencement of business hours on the next day to prepare and despatch the notice; and inasmuch as the notice was mailed in season to go by the next mail, which left on the day succeeding that of the dishonor after business hours had commenced, the notice in that case was adjudged sufficient. This principle is precisely in accordance with the ruling of this court

in the case of *The Sussex Bank* v. *Baldwin.* There is, it is believed, no well considered adjudication that carries the doctrine further. In *Hawkes* v. *Salter*, 4 *Bing.* 715, C. J. Best is reported to have expressed himself clearly of opinion that notice of protest of a bill dishonored on Saturday, where the mail closed daily at half-past nine in the morning, would be sufficient if put into the post office in time for the mail of Tuesday. This was, however, but a *dictum*, and affected the rights of no one, as the court held that there was not sufficient evidence that the notice was mailed even on Tuesday morning. In this case half-past nine o'clock may well have been regarded as before business hours, and as an inconveniently early hour to require notice to be mailed. In this view, it is in strict accordance with the recent American cases. In the present case, the proof being that the notice was not mailed till after twelve o'clock of the day following the day of the dishonor of the bill, and there being no proof of the hour at which the mail for the residence of the endorser was closed or forwarded, the proof of service of notice is clearly defective. The plaintiff failed to establish his case, and should have been nonsuited on the trial.

The verdict must be set aside, and judgment of nonsuit entered.