# Thomas J. Graham *vs.* James A. Sangston, George E. Sangston and Laurence Sangston.

The act of 1837 makes the protest of a promissory note or bill of exchange, *prima facie* evidence of non-payment or non-acceptance, and of its presentment for payment at the time and in the manner stated in the protest; and when the protest states, that notice of such payment or non-acceptance has been sent, such protest shall be *prima facie* evidence, that such notice has been sent or delivered in the manner stated. This act, in no manner,

alters the law in regard to the necessity of notice, or in regard to its character.

No precise form of words is necessary to be used in giving the notice, but it should, either expressly, or by just and natural implication, have the following requisites:—1st. A true description of the note, so as to ascertain its identity. 2nd. An assertion that it has been presented to the maker at its maturity and dishonored.

This note being payable at the Farmers Bank of Maryland, and held by that bank, all that was necessary was to inform the endorsers that the note was *due* and *unpaid*. It was not necessary to inform the endorsers that they were held liable.

The defendant in this case being a member of the legislature, which was in session when the note became due, the delivery of the notice at his room in Annapolis was sufficient.

An appeal from Calvert county court.

The cause of action in this case is a promissory note, of which the following is a copy:

"Huntington, *September 24th*, 1845.

Four months after date, I promise to pay to Uriah Lavielle, or order, fifteen hundred dollars, value received, negociable and payable at the Farmers Bank of Maryland, Annapolis.

Signed,—Alexander Harris."

Endorsed:—"*Uriah Lavielle, Mackall Harris, Thomas J. Graham, James J. Mackall, Sangston & Co.*"

Non-assumpsit being pleaded, there was a trial and verdict for the plaintiff. The defendant at the trial of the case took two exceptions. These presented the question, whether the defendant had sufficient notice of the dishonor of the note?

The plaintiffs, in order to prove a demand on the drawer of the note, and notice to the defendant of the non-payment thereof, offered in evidence the *protest* of the note. By this it appeared that when the note became due, payment of it was demanded at the Farmers Bank. This being refused, the notary gave notice to the defendant, one of the endorsers, by leaving the notice at his room in the City Hotel, Annapolis, the same day. The protest stated the presentation, demand, refusal, &c., and proceeds: "and on the same day, I addressed written notices to the endorsers of the note, therein

Graham *vs.* Sangston.

informing them that they were severally held liable for the payment thereof."

Some parol testimony was offered in the course of the trial; but as this had no influence in the decision of the main question, and is fully stated in the opinion of the court, it will not be repeated here.

The defendant was, at the time of the maturity of the bill, a member of the General Assembly of Maryland, then in session, and it was stated, boarded at the City Hotel, Annapolis, but whether in the city on the day that the notice was given, it did not appear.

This case was argued before LE GRAND, C. J., and ECCLESTON and TUCK, J.

By *D. Claude* and *Pratt* for the appellant, and *McLean* and *Causin* for the appellees.

*Claude* for the appellant, referred to act of 1837, ch. 253, and insisted, that the protest was not in form. It was the sole evidence relied on in the court below.

This is a suit against an endorser, and the notice must state, in express words or by implication, the dishonor of the note. 20 *Eng. Com. Law Rep.*, 226. 27 *Eng. C. L. Rep.*, 351, 42 *Eng. C. L. R.*, 726. *Story on Promissory Notes*, secs. 348, 350.

The notice being left at the hotel in Annapolis, which was not the residence of the defendant, it was not left at the proper place. The sufficiency of the notice is the sole question. The residence of the party is the proper place to which to send the notice. 5 *Binney*, 541. 9 *Yerger*, 1. Notice sent to the house of a member of Congress, he being then at Washington. See also p. 6. 15 *Wend.*, 504, 507. A promise will not be a waiver of notice, unless it be shown he knew that he was discharged. 16 *John.*, 423. 6 *Wend.*, 658.

As to what form of notice is insufficient: 9 *Medcalf*, 174. 3 *Medcalf*, 495.

Graham *vs.* Sangston.

*Causin* for appellee.

In this case the notice was left at the defendant's room in Annapolis. The case in *Yerger, p.* 1, only shows that a notice delivered at the residence of a member of Congress, is a good notice, but it does not decide that a notice left at his lodgings in Washington, would not be good. See 6 *Metcalf,* 1.

As to the sufficiency of the notice: *Meason and Welsby,* 44, notice, "unpaid and requested to attend to it immediately." 66 *Eng. Com. L. Rep.,* 411. 61 *Eng. C. L. R.,* 547. 60 *E. C. L. Rep.,* 1016, as to the terms of the notice. 57 *Eng. C. L. Rep.,* 695. *Story on Prom. Notes, sec.* 352,—'3 '4. 12 *Mass.,* 6.

The protest is made evidence by the act of 1837, ch. 253, sec. 2, and this protest states the demand &c., all correctly.

Notice that you are held liable, is notice that the note has been protested. When it is said, "I sent notice," it means notice of protest, not notice that they were held liable, &c., for he says, therein informing them, &c., that is, in the notice of protest informing them, &c.

1801 ch. 86. As to notaries: See 4 *G.,* 195, 201. As to waiver of notice: 8 *Eng. C. L. Rep.,* 8, 9. 14 *Eng. C. L. Rep.,* 336. 4 *H. & J.,* 253.

*McLean* for appellees.

1 *H. & J.,* 423, 427. Anything which shows that the holder did not mean to give credit to the drawer, is sufficient. 2 *John's Cases,* 338. It is to put the endorser on inquiry.

At the time of the protest the bank was the holder of the note. 2 *Peters,* 649. The bank being the holder, no demand was necessary, and, of course, no notice of it was necessary. 4 *Gill,* 195, 201. The notary said, he sent notice of protest, without saying what the notice was. The "manner" of the notice, required by the second section of the act of 1837, is gratified by the notary saying it was in writing. 4 *Gill,* 201. The case decides, that saying he sent notice, is sufficient. The notary, in this case, does not say that "he

sent notice," but, that "he sent notice, *therein* informing them," &c. He did all his duty, and more. The *extra* duty cannot do harm.

The instruction is in regard to the notice, alone.

If a promise is made, it is good, without proving the demand and notice. To get rid of the promise, the defendant must show that there was no demand.

2 *Campb. N. P.*, 188. A promise to pay is evidence of a demand and notice. 7 *East.*, 234. The difference between a waiver of notice, and, the presumption of notice.

*Chitty on Bills*, 533, 534. The court cannot presume laches; the defendant must show laches by evidence.

6 *Medcalf*, 1, is an authority to show that Annapolis was the proper place to leave the notice.

As to form of notice, 1 *Hare and Wallis*, American leading cases, 227, 249. 9 *Wend.*, 280. *Story on Prom. Notes*, sec. 354. *Chitty on Bills*, 502.

As to notice: *Story on Prom. Notes, sect.*, 447, 362 *note*, and *page* 448, as to promise.

*Pratt* for the appellant.

Notice was left at the hotel. The oral testimony cannot be considered, in affirming or reversing the opinion of the court below. To prove the demand, the protest, &c., was offered, not the oral testimony. The court's decision shows, that the protest, &c., was all that was relied upon to prove the demand. The witness does not refer expressly to the note in contest. It is not a promise to pay all, but a balance, after getting securities. If there was any promise, it was only a conditional one. It was not made to the Sangstons; and there is no evidence that they accepted or heard of it.

If the promise is binding, it can only be so as a waiver. *Story on Prom. Notes, sect.* 275; as to waiver, *sect.* 359. If there is any irregularity in the notice, a promise is not evidence of a due demand and notice. *Story on Prom. Notes*, 361, 363. *Bailey on Bills, (2nd Am. ed.,)* 296.

As to promise, 4 *H. & J.*, 535, 538.

To bind the endorser, the plaintiff must prove, that he knew of the laches. 12 *Mass.*, 52. 18 *John.* 152. 6 *Wend.*, 158. 4 *Cow.*, 119. 9 *Mass.*, 332. 17 *Martin*, 359.

In order to bind the endorser, the notice must be served on him in person, or sent to his regular post-office.

No evidence, that the endorser boarded in Annapolis.   Mr. Webster was in Washington, 9 *Yerger*, 1.   A notice good at the residence of a member of Congress.   6 *Peters*, 250, 259. Notice given at a boarding-house is good.   But Judge Story said, that notice to a man at an inn, was not good.   He also cited, 5 *B. Munroe*, 7.

As to the act of 1837, ch. 253.   At common law the protest was no notice.   The act of Assembly makes the protest *prima facie* evidence, only when the protest shall state the non-payment of the note.   It never was sufficient, merely to state that notice was given.   1 *H. & J.*, 423, 427.

27 *Eng. Com. L. Reps.*, 351, is an authority to show that notice of non-payment, and that the indorser is held liable, is not sufficient.

If a note be payable at a bank, and the same bank is the holder of the note, a demand is not necessary, but notice of non-payment is necessary.   19 *Meason and Welsby*, 45.   3 *Medcalf Rep.*, 503, 505.   9 *Medcalf*, 174.   1 *Am. Leading Cases*, 231, 234.   4 *H. & J.*, 534, 537.   2 *Greenl.*, sect. 186.   *Story on Prom. Notes*, 350; note 2, *p.* 352, sect. 354; note 5; *p.* 434.   42 *Eng. C. L. Reps.*, 739. 1 *Spear's Reps.*, 231, 247.   In Maryland, even where a note is payable at, and held by, a bank, a demand is necessary.   See 7 *G. & J.*, 84, 88, 89.

Mr. Causin observed, that this last case was before the act of 1837, ch. 253.

As to 2nd exception:   The proof does not sufficiently show, that the party was actually in Annapolis.   It was a good notice, if the party was a boarder; otherwise, not.

Le Grand, C. J., delivered the opinion of the court.

This was an action of assumpsit instituted by the appellees in Calvert county court, as endorsees of a promissory note against the appellant as endorser.

The right of the appellees to recover is denied on the ground, that appellant had not such notice of the dishonor of the note, as is required by the law, to fix the responsibility of an endorser.

The note was made negotiable, and payable at the Farmers Bank at Annapolis. The plaintiffs below, to "prove *the demand upon the drawer of the note, and notice of non-payment thereof to the defendant, offered the protest of the note*" in evidence, from which it appeared, that when the note became due he demanded payment at the Bank which was refused, and that he gave notice to the defendant, one of the endorsers, by leaving the notice "at his room in the City Hotel, Annapolis, the same day." The protest, after stating the presentation, demand, refusal, &c., proceeds to say, "*and on the same day I addressed written notices to the endorsers of the said note, therein informing them that they were severally held liable for the payment thereof.*"

In addition to the protest, the plaintiffs proved that a short time after the death of the maker of the note, which occurred in May 1847, and before the commencement of this suit, the defendant requested the witness to ask the indulgence of the plaintiffs upon his responsibilities, in their hands as endorser for Harris, and that they, the plaintiffs, should first get what they could from said Harris, and that he would pay the balance: but without proving the defendant specified the note in this cause, as the note for which he was responsible, and without stating what note he had endorsed. The first exception states, that the *only evidence offered to prove notice to the defendant was the protest;* and on this evidence, that is to say the *protest,* the defendant asked the court to instruct the jury, that the said protest was not sufficient for that purpose; but the court refused to give this direction, and instructed the jury, *that the protest* was sufficient to show a due demand and non-

9    v.1

payment, and *due notice* to the defendant *of such demand and non-payment.*

From this statement, it appears that the only question raised by the first exception is, did the protest constitute sufficient evidence of notice to the defendant, of demand and non-payment? There was no question raised, and none determined by the court in regard to the testimony offered, to show that the defendant had agreed to pay, as testified to by the witness Sangston, and under the act of 1825, ch. 117, that evidence must be considered, so far as the decision of this court is concerned, as not before them on the first exception.

The liability of an endorser of a promissory note is contingent, and to fix it, it is essential certain things should be done by the holder. It is indispensable the endorser should have notice of demand and non-payment. Prior to the passage of the act of 1837, ch. 253, in the case of inland bills and promissory notes, the proof of such notice had to be proved independently of the protest of the notary. By that act it is provided, that a protest duly made by a notary public, of a promissory note, for non-payment, or of a bill of exchange, whether foreign or inland, for non-acceptance or non-payment, shall be prima facie evidence of such non-payment or non-acceptance, and of the presentment of such note for payment, or of such bill for acceptance or payment, at the time and in the manner stated in the protest; and by its second section it is declared, that when such protest shall state *that notice* of such *non-payment,* or *non-acceptance, has been sent* or delivered to the party or parties to such note or bill, and the manner of such notice, such protest shall be prima facie evidence, that such notice has been sent or delivered in the manner therein stated.

This act in no manner alters the law in regard to the *necessity* of notice, nor, in regard to the *character* of the notice; its whole office is to make the protest of the notary prima facie evidence, that notice has been given in the manner and of the character *described in the protest,* leaving the question of the sufficiency of the notice to be determined by the law,

Graham *vs.* Sangston.

as it was prior to the passage of the act. This being so, the question is, was the notice given such as is required by law? The notice as stated in the protest, (and it was the *only* evidence offered on this point,) is as follows : "And on the same day I addressed written notices to the endorsers of the said note, *therein informing them, that they were severally held liable for the payment thereof.*" It says nothing of a demand nor of non-payment.

It must be recollected that the protest does not establish the fact, that the defendant had *notice* of the demand and non-payment, although it does, that such demand had been made and payment refused. There is no evidence of the protest having been sent to endorsers, but merely a *notice,* informing them "*that they were severally held liable for the payment*" of the note.

All the authorities, without exception, either in England or this country, hold it to be indispensable, that the endorser should have notice of *demand and non-payment.* It is true that in regard to the *evidence* of such notice, there has been some difference of opinion among the courts, but in regard to the notice itself there has been none.

The result of the authorities on this head is, that although no precise form of words is necessary to be used in giving the notice, yet, it is indispensable, that it should either expressly, or by just and natural implication, contain, in substance, the following requisites :—1st. A true description of the note, so as to ascertain its identity. 2nd. An assertion, that it has been duly presented to the maker at its maturity, and dishonored. *Story on Promissory Notes, sec.* 348. And, in section 350, Judge Story observes in regard to the statement in the notice, that the note has been duly presented and dishonored,—"this statement is essential to establish the claim, or right of the holder, or other party, giving notice; for, otherwise, he will not be entitled to any payment from the endorser. It will be sufficient, indeed, if the notice sent necessarily, or even fairly implies, by its terms, that there has been a due presentment and dishonor at the maturity of

the note. But mere notice of the fact, that the note *has not been paid,* affords *no proof whatever,* that it *has been presented* in due season, or even that it has *been presented at all;* for it may be, that the holder means to rely upon some legal excuse for non-presentment.''

In the case where a note is in terms, as is the case with the one sued on, or by tacit or express consent of parties, payable at a bank, it is sufficient, the note is there at maturity, ready to be delivered on payment, should the maker come to pay it. 12 *Mass.,* 172. 17 *Mass.,* 172. And if the maker does not go to the bank and pay it on the day when it becomes due, it is dishonored and no other demand is necessary. 3 *Metcalff,* 497. In the case before us, by the express terms of the note, it was made negotiable and payable at the Farmers Bank, at Annapolis, and therefore it was not necessary any *demand* of payment should have been made: the failure to pay by the maker was the dishonor of the note. *Bank of United States vs. Carneal,* 2 *Peters,* 543. But this does not dispense with *notice* to the endorser that it had been dishonored. In the case of *Mills in Error, vs. U. S. Bank,* 11 *Wheat.,* 431, Judge Story, delivering the opinion of the court, when referring to the objection that the notice did not state that payment was demanded at the bank, when the note became due, says: ''It is certainly not necessary that the notice should contain such formal allegation. It is sufficient that it states the fact of non-payment of the note, and that the holder looks to the endorser for indemnity.''

Adopting the principles of these cases, (and they are recognized by tribunals of the highest character,) all that we hold it was necessary in this case to have done, was to inform the endorsers that the note was *due* and *unpaid,* but that it was not necessary to have informed them they were held liable, this followed as a necessary consequence, to use the language of the court in *Mills vs. U. S. Bank,* 11 *Wheat.,* ''A statement of non-payment and notice is, by necessary implication, an assertion of right by the holder, founded on his having complied with the requisitions of law against the endorser.''

In the case before us, so far as we are informed by the testimony, what was required to be in the notice was omitted, and what was not essential was placed there.

For these reasons we think the court erred in rejecting the prayer of the defendant contained in the first bill of exceptions, and also in giving the instruction, that the protest was sufficient evidence of notice of demand and non-payment.

The only additional evidence in regard to notice, is that mentioned in the second exception, which shows that the defendant was a member of the legislature when the note became due, and that he boarded at the City Hotel, the witness, however, not recollecting whether he was in Annapolis between the 20th and 30th of January 1847.

This testimony in no manner relates to the *form* of the notice, and, therefore, what has been said in regard to the first exception, is applicable to the second, so far as that is concerned. We are of opinion, that the court ought to have given the instruction asked for by the defendant, and not have given the direction which it did. But inasmuch as we think this case ought to go back under a *procedendo*, (for the plaintiffs may be able to show, by the notary or other person, that the legal notice was given to defendant,) we deem it proper to express our opinion in regard to the additional testimony in the second exception. We hold the facts stated by the witnesses, if believed by the jury, would justify the court in instructing them, that the delivery of the notice at the room of the defendant, in Annapolis, was a proper delivery.

It is undoubtedly true, as a general rule, that the notice should be sent to the place of residence of the party, but this does not exclude a delivery to himself at any other place, nor the delivery at such place where he is presumed in law to be.

The case in *Yerger*, 1, does not decide, that a notice sent to Washington to a member of Congress, would not be a compliance with the requisitions of the law, but merely, that it is not *incumbent* on the holder to send it there, and that if sent to his residence, it will be sufficient. The case clearly implies, however, that a notice sent to Washington, directed

to a member of Congress, while Congress was in session, would be sufficient; and the case of *Chonteau vs. Webster*, 6 *Metcalfe*, 6, expressly decides such direction would be sufficient. Although it was admitted in that case the defendant was in Washington when the notice was sent, the court do not decide the question on that ground, but on the general principle. The court say: "The fact of domicil is *one* circumstance *only*, in determining where notice shall be given. A man may retain his domicil at a place, though in fact personally absent therefrom, and absent with his family for years. Such is the condition of a President of the United States, or cabinet minister, residing at Washington, or of an ambassador in a foreign country. His domicil is not thereby changed; *but yet we cannot doubt*, that notice to such public officer, at the place of his actual residence, to which, for the time being, *he is fixed by his public duty*, would be good. Yet the only distinction between a President of the United States and a senator, is, that the residence of the former at Washington is somewhat more protracted, and uninterrupted by the intervals between sessions of Congress, than that of the latter." The court in that case recognize the rule, that notice should be given at such place that it will be most likely to reach the endorser promptly, and rely upon 1 *Peters*, 578, and 2 *Peters*, 553.

*Judgment reversed and procedendo awarded.*