## ZADOCK SASSCER *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS BANK OF MARYLAND.

A notary public when called upon as a witness to prove the circumstances attending the protest of a note, may use his notarial record and the original protest in order to refresh his memory.

By placing such record and protest in the hands of the witness, and submitting their contents to the jury, they became evidence in the cause, and entitled to as much weight as if originally offered as evidence *per se*.

The entries of a notary made in the usual and regular course of business, contemporaneously with the facts they recite and verified by the notary, the person who made them, are admissible in evidence.

Evidence of notice to an endorser, in addition to that contained in the protest, if not contradictory or inconsistent with it, may be offered; in addition to the facts stated in the protest, it may be shown that the notice to the endorser informed him that the note was unpaid, and was put in the post office in time to go by the next mail thereafter.

Where a note is payable at a bank, and is there at its maturity, notice informing the endorser that it had not been paid, and that he was held responsible for its payment, is sufficient, as it imports that the note has been dishonored.

Sundays and great festivals, such as Christmas, are *dies non juridici* in law, and courts will judicially take notice of them, and of the commercial usage to observe them, without any proof upon the subject.

A notice to an endorser should contain so true a description of the note as to enable him to ascertain its identity, and to know to what particular note the notice applies.

The omission in a notice to mention all the endorsers on the note, renders it insufficient and invalid, if the party to whom the notice is sent has been misled thereby, and whether he has been so misled is a question of fact for the jury, and not of law.

If notice be put in the post office in time to go by the first mail after protest it is sufficient, and it is immaterial when it was mailed or left the office, or when, if ever, it was received by the endorser.

Where the weight of testimony is all upon one side in regard to any fact or question, it is improper for the court to submit such a question to the jury.

It is only where the testimony is sufficient to raise a rational doubt in regard to facts touching the legality of notice to an endorser that the intervention of a jury can be invoked.

Though the court will not presume ignorance or neglect of duty on the part of postmasters, it cannot so far assume fidelity in them as to falsify the positive statements of a notary public in support of his own official acts.

APPEAL from Prince Georges county court.

This was an action of *assumpsit*, by the appellees against the appellant, as endorser of a promissory note, dated the 23rd of June 1847, payable "six months after date" at "the Farmers Bank of Maryland." Plea, *non assumpsit*.

*1st Exception.* The making and endorsement of the note having been admitted, plaintiffs produced as a witness M. C. Karney, who stated he was a notary public at the maturity of the note, and produced into court the record of his notarial acts and the original protest of the note, and proposed to inspect them with a view to refresh his memory, but defendant objected to his right so to do, which objection the court

overruled.   The witness then, having inspected said record and protest, stated, that on the 24th of December 1847, the note was placed in his hands by plaintiffs, the holders, with directions to make demand thereof, and that accordingly on the same day, and during the business hours of the banking house of the plaintiffs, he presented the note at the counter of the bank, and inquired of the teller whether the drawer was there, and whether there were any funds there provided for its payment, to which the teller replied that the drawer was not there, that no funds had been provided for its payment, and that it would not be paid, and thereupon he protested it for non-payment, and sent a letter or note, purporting to be a notice of the dishonor of the note to the defendant, as endorser, addressed to him at Upper Marlborough, (which was admitted to be his usual post office,) and deposited the same in the post office at Annapolis in time to leave by the mail, which left Annapolis for Upper Marlborough next after said protest.   That he had no record or copy of such notice, but it was his invariable custom in giving notice to endorsers of protested notes to use printed forms, one of which he produced and filled up from the original note, his record, and the original protest, as follows:

"ANNAPOLIS, *24th December*, 1847.

*Sir*,—Please take notice that a promissory note drawn by Robert W. Bowie for $4000, dated 23rd June 1847, payable six months after date to Robert W. Bowie, Jr., or order, and by you endorsed, this day being due, is delivered to me by the president," &c., "of the Farmers Bank of Maryland for protest, and the same not being paid, is protested, and will be returned to the said president," &c., "and that you are held responsible for the payment."

That from his invariable custom of using such printed forms, he had no doubt the notice addressed to defendant was substantially the same with that now filled up by him. In answer to defendant's questions he stated, that prior to, and independent of, his inspection of his record and the original protest, he had a general recollection of having protested

the note, but would have been unable to state the time and circumstances; but that said inspection had so far refreshed his recollection, that he was satisfied the facts above stated are true; that he gave such testimony from his general recollection of having protested the note, the note itself, his notarial record, the original protest, and his constant habit of making every entry in his notarial record immediately after the facts transpired and according to the fact, and his habit in all cases of protest of giving notice to all the endorsers of the paper protested; that independent of his examination of his record and the original protest, he had no recollection of mailing said notice or of the time of sending it by mail, nor does he now recollect at what time or on what days the mail then went from Annapolis to Upper Marlborough; that the drawer of the note at the time of its maturity resided in Prince Georges county, and had no residence at Annapolis.

The defendant still objected to the admissibility of this testimony so proposed to be given by plaintiffs, and particularly to the evidence of the form of the notice stated to have been sent to defendant, upon the ground that having resorted to the original notarial records and act of protest for the purpose of enabling the witness to prove the facts therein stated, it was not competent for them to offer any evidence adding to or contradicting said record and protest, insisting that by placing the original protest and record in the hands of the witness for the purpose aforesaid, the plaintiffs made the same evidence in the cause.

The original protest is then set out, the body of it being in substance as above stated by the witness. The part which speaks of the notice is as follows: "And on the same day I addressed written notices to the endorsers of the said note, therein informing them that they were held liable for the payment thereof," the notice addressed to defendant being directed to him "at Upper Marlborough, and all were put in the post office in the city of Annapolis, Md., in time to go by the first mail." The court, (MAGRUDER, C. J., KEY and CRAIN, A.

J.,) overruled these objections and permitted the evidence to go to the jury, and defendant excepted.

*2nd Exception.* The defendant, upon the facts stated in the first exception, prayed the court to instruct the jury that the plaintiffs are not entitled to recover, upon the ground that the notice (offered in evidence) to the defendant was not sufficient to render him liable as endorser, which instruction the court refused and defendant excepted.

*3rd Exception.* The defendant then proved that a notice to John H. Skinner, the second endorser on the note, postmarked "Annapolis, December 27th," addressed to *John S. Skinner,* Upper Marlborough, was the only notice sent to John H. Skinner, (that being his true name,) as endorser; that the note was discounted for the use of the drawer, and that there was a *John S. Skinner* in Prince Georges county, whose post office was at Nottingham, where said notice was forwarded by the postmaster at Upper Marlborough, by the first mail after it reached the latter place. Upon these facts he asked an instruction, in substance, that the plaintiffs cannot recover, because the failure to give proper notice discharged the second endorser, and prevented all legal recourse to him by defendant, who was the third endorser, which the court refused and defendant excepted. (This exception was abandoned in argument.)

*4th Exception.* Defendant then proved by said Karney, that he mailed the notice to defendant at the same time he did that to John S. Skinner. The postmark on the latter was the "27th of December 1847." He then proved by the postmaster at Upper Marlborough, that it was his habit to forward misdirected letters from his office by the first mail after they were received, and that it was the habit at the Annapolis post office, known to him by examining letters sent from that office, to postmark them the day they were sent, and at that time the mail days to Nottingham were Tuesdays and Saturdays, and the notice to Skinner was not sent from his office until Saturday, the 1st of January, and from his habit of constantly forwarding letters by the first mail after being received, he

infers that if it had reached his office by the mail which at that time came from Annapolis on Monday, (which was the 27th,) the day it was marked mailed, it would have been sent to Nottingham on the 28th of December, and not on the 1st of January. He further proved that the mail days from Annapolis to Marlborough were Mondays, Wednesdays and Fridays. The plaintiffs then proved that the 24th of December 1847, was Friday, that Saturday, the 25th, was *Christmas day*, and the 26th was Sunday. Upon these facts the defendant prayed the court to instruct the jury, that if they found from the evidence that the notice to defendant of the protest of said note was not mailed at Annapolis in time to be sent by the mail on the 27th, then plaintiffs are not entitled to recover, because the notice was not sent in proper time, which instruction the court refused, and defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*John M. S. Causin* for the appellant.

*1st Exception.* There are but two modes in which the notarial record and original protest can be used:—1st, as an original entry; or 2nd, to refresh the memory of the witness. It cannot be used for both purposes. 1 *Greenlf. on Ev., sec.* 115. The protest was not in evidence as an original entry— it was *produced into court*, but this does not make it evidence. 1 *Greenlf. on Ev., sec.* 437. The avowed purpose was to use it to refresh the memory of the witness, but it did not effect that object, because he says he cannot speak *independent* of the memorandum, which he must do. 1 *Starkie on Ev.*, 154, *note (c.)* 1 *Greenlf. on Ev., sec.* 116: 16 *Seargt. and Rawle*, 90. 2 *Hill*, 531. Again, any oral statement of the notary extending the record was inadmissible, the protest itself being the best evidence of the act and circumstances of protest.

*2nd Exception.* Upon this exception we insist:—1st. That

the evidence of notice, whether oral or of record, does not, with sufficient explicitness, recite a demand upon and refusal to pay by the drawer so as to bind the endorser.    2nd.  The note was due on the 26th of December, and the protest on the 24th was premature, there being no evidence of a general usage of anticipating the days of grace, unless the court is bound to notice *judicially* the days of the week, and *Christmas* day.   On this point, see 6 *Viner's Abr.*, 491.   1 *Starkie on Ev.*, 444, 445.   *Croke Eliz.*, 227.   3rd.  The notice does not sufficiently describe the note, it omits the names of some of the endorsers.    See *Story on Prom. Notes.*, sec. 349.   11 *Wheat.*, 436, *Mills vs. Bank of the United States.*   12 *Mass.*, 7, 8.   Again, the court has assumed to decide that the description was sufficient without leaving it to the jury.

*4th Exception.*  This presents the single point whether the notice must be sent by the *next practicable mail* after protest or not?   That such is the rule of law, see 6 *East.*, 10, 11. *Story on Prom. Notes*, sec. 320, 327.   4 *Wash. C. C. Rep.*, 468.   *Byles on Bills*, 211.   2 *Wheat.*, 377, *Lenox vs. Roberts.* 7 *Mees. and Wels.*, 515.   7 *G. & J.*, 91, *Farmers Bank vs. Duvall.*   7 *Gill*, 225, *Bell vs. Hagerstown Bank.*   2 *Campbell*, 210.   3 *Kent's Com.*, 105, 106.   22 *Maine*, 125, *Beckwith vs. Smith.*   There is nothing to show at what time on Monday the mail left Annapolis, and there is evidence sufficient to warrant the jury in finding that the notice did not go on that day, which was the next practicable mail.   There is no evidence that it was put in in time to go by the mail of that day.   The mail mark is not conclusive, but is only *prima facie* evidence, and may be rebutted.   If there is any evidence, no matter how slight, tending to prove the issue, its effect must be left to the jury.   The testimony of the postmaster at Marlborough conflicts with that of the notary, and the jury were alone competent to decide between them.   What constitutes due diligence is a question for the jury where the evidence is doubtful or conflicting.   7 *Gill*, 216, *Bell vs. Hagerstown Bank.*

*A. Randall* and *Thos. S. Alexander* for the appellees.

*1st Exception.* The whole notarial record and original protest was in the cause as evidence, and this exception is based on that idea, for the objection is to the *whole* testimony. The act of 1801, ch. 86, sec. 5, defines the duties of notaries; their acts are those of sworn public officers of the State, and their protests are made *prima facie* evidence, by the act of 1837, ch. 253. The entries made by them at the time, in the regular course of their business, are admissible. 1 *Greenlf. on Ev.,* secs. 115, 116. 7 *Humphreys,* 70. 15 *Conn.,* 206. 7 *Gill,* 218, *Bell vs. Hagerstown Bank.* The case of *Lewis vs. Kramer and Rahn,* 3 *Md. Rep.,* 265, is not in conflict with this view, for here the notary *himself* made the entry of the facts to which he testified. That the notarial record and original protest, could be used to refresh the memory of the witness, see 1 *Cranch C. C. Rep.,* 534, *Thornton vs. Stoddart.* 1 *Do.,* 525, *Thornton vs. Caldwell.* 2 *Do.,* 426, *Jones vs. Jones.* *Do.,*625, *Cozle vs. Gozzlen.* 3 *Md. Rep.,* 287, *Lewis vs. Kramer and Rahn.* 1 *Greenlf. on Ev.,* secs. 436 *to* 440. The other evidence independent of the protest, was also admissible,—the protest is made by the act of 1837, ch. 253, but *prima facie* evidence, and any defects in it may be supplied. 1 *Md. Rep.,* 59, *Graham vs. Sangston.* *Ib.,* 512, *Hunter vs. Van Bomhorst.* 1 *Greenlf. on Ev.,* sec. 279 Again, where objection is made to the whole evidence, if any part is admissible for any purpose, there is no error in admitting it. (3 *Gill,* 220, *Budd vs. Brooke.* 3 *Md. Rep.,* 255, *Nailor vs. Bowie ;*) and the evidence was certainly admissible, to prove the making and endorsement of the note.

*2nd Exception.* The testimony is, that *"notice of protest"* was sent, and these words import demand and refusal. 4 *Gill,* 194, *Barry vs. Crowley.* 1 *Md. Rep.,* 512, *Hunter vs. Van Bomhorst.* Sundays and great hollidays are *judicially* noticed by the courts, and when a note falls due on any of these days, the established usage is to protest it on the first *dies juridicus* preceding. 3 *Kent's Com.,* 103. *Story on Prom. Notes, secs.* 222, 321. 6 *G. & J.,* 274, *Kilgour vs. Miles.* Misdescrip-

tion of the note in the notice, is a question of fact and not of law—whether the party be misled or not. (11 *Wheat.*, 432. *Mills vs. Bank of United States.* 12 *Mass.*, 7. 5 *Barbour*, 681. 9 *Pet.*, 45, *Bank of Alexandria vs. Swann.* 7 *Exchequer Rep.*, 578;) and the prayer does not put it to the jury to find such a misdescription as to mislead the defendant to his prejudice.

*4th Exception.* Monday was the first *dies juridicus* after the protest, and we were entitled to the whole of that day, to deposit the notice in the post office. *Story on Prom. Notes*, secs. 324, 327. 7 *G. & J.*, 78, *Farmers Bank vs. Duvall.* 3 *G. & J.*, 474, *Flack vs. Green.* 6 *East.*, 3. 4 *Bingham*, 715. 3 *Kent's Com.*, 105, 106. 4 *Leigh*, 37. But there is no evidence in the record, upon which to base the prayer in this exception, and for this reason it was properly rejected. 5 *H. & J.*, 32. 7 *H. & J.*, 295. 2 *H. & G.*, 164. 5 *H. & J.*, 486.

MASON, J., delivered the opinion of this court.

This an action of assumpsit, instituted by the appellees against the appellant, as an endorser of a promissory note. There are no questions of pleading involved in the case, nor is there any dispute about the execution of the note, or of its endorsement by the appellant. The whole controversy relates to the sufficiency and regularity of the notice of protest, and to the legality of the evidence adduced by the plaintiffs to establish such notice, and these several questions are presented by four bills of exceptions, taken by the defendant.

The plaintiffs to support their case, did not profess to offer directly in evidence, as might have been done, the notarial record of the notary who protested the note, nor the original protest, but they called M. C. Karney, the notary himself, to prove the circumstances under which the protest was made, and the notice given. To enable him to do so, he "produced into court the record of his notarial acts, and also the original protest, and proposed to inspect the same, with a view of refreshing his memory in regard to the subject." To this the defendant objected, but the court overruled his objection.

53    v.4

The witness after having refreshed his recollection, by an inspection of the original papers, proceeded to give the contents thereof in full, and to detail some other facts in addition to those set out in the papers, but not contradictory or inconsistent therewith. The defendant also objected to this testimony, on the ground that it was not competent for the plaintiffs to offer any evidence, "adding to or contradicting the notarial record and original protest, the defendant insisting, that by placing said original protest and record thereof, in the hands of the witness for the purpose aforesaid, the plaintiffs had made said instrument evidence in the cause." This objection was also overruled, and hence the first exception.

The court were right we think, in overruling the defendant's first objection, which related to the right of the witness to refer to the paper, for the purpose of *refreshing his memory.* We do not deem it necessary in the view we take of the case, to say whether the witness' memory was sufficiently refreshed by the reference to the papers, to make his statements of the facts contained in them evidence or not, yet we are clear that it was competent for the plaintiffs, to use the writings for the purpose of assisting the memory of the witness. In *Greenleaf's Ev.,* 1 *vol., sec.* 436, it is stated, that a witness may refresh and assist his memory by the use of a written instrument, and in the present case this was all that the plaintiffs proposed that the witness should do.

Although, it is true as has already been stated, the plaintiffs did not, in the first instance, offer the notarial record and protest as evidence *per se,* yet we think that having placed them in the hands of the notary, and their contents having been submitted to the jury, whether by the plaintiffs or defendant, they thereby became evidence in the cause, and entitled to as much weight as if they had been originally offered for that purpose. These entries having been made in the usual and regular course of business, and contemporaneously with the facts they recite, and having been verified by the person who made them, are we think, properly evidence in the cause. Notwithstanding these papers were before the court, we do

not concede the correctness of the objection made by the defendant, that it was not competent for the plaintiffs to offer any evidence of notice, in addition to that contained in the notarial record. The witness did not propose to, nor did he in fact contradict this record. In the case of *Sangston vs. Graham,* 1 *Maryland Rep.,* 59; and again, in *Hunter vs. Van Bomhorst, ibid.* 504, this court recognized the right of the plaintiff to offer evidence of notice in addition to, if not inconsistent with, that contained in the protest. In the latter case, the proof, as shown by the protest, was deemed insufficient to establish a legal notice to the endorser, of the dishonor of the note, yet the plaintiff was permitted to supply the omission by independent testimony. The reason for all this, is deemed perfectly sound and manifest. The entries by the notary are but his memoranda of what he did, and may or may not contain a full statement of all his official acts; and, therefore, when any material circumstance of the transaction has been omitted in the record, it is but proper that the omission should, if it can, be supplied. These views would appear to be in perfect harmony with the spirit of the act of 1837, chap. 253, by which notarial records are made evidence to establish notice to the endorser. This act excludes the idea that *the protest* is to be the *only* evidence upon the question, by providing that it "shall be *prima facie evidence,* that such notice has been sent or delivered, *in the manner therein stated.*" The circumstances detailed by Karney, relating to this transaction, though independent of, but not inconsistent with the notarial record and protest, were evidence. In addition to the facts disclosed by that record and protest, to the truth of all of which the witness swore positively, he proves that in the notice sent to the defendant, he informed him that the note *was unpaid,* and that he deposited the notice in the post office *in time to go by the next mail thereafter.*

In this way the plaintiffs have established their whole case, as we shall presently show, by competent and legal evidence. So much for the first exception.

We are not prepared to sustain any of the objections made

by the appellant to the ruling of the court below, under the second exception. This exception presents the question of the sufficiency of the notice of protest, upon the evidence recited in the first bill of exception.

In this case the note was made payable at the bank, and was at the bank on the day it fell due, for payment. It not being paid, the notary informed the endorsers that *it had not been paid*, and that they were held responsible for its payment. So far, this was sufficient, as the notice imported that the note had been dishonored. 1 *Md. Rep.*, 59 *and* 504. So much for the first objection pressed upon us by the appellant under this exception,

As to the second : The note would have fallen due, including the days of grace, on the 26th day of December 1847. That day was Sunday, and the day preceding it, being the 25th December, was of course Christmas day, and the note therefore, was protested on Friday the 24th. No evidence was offered to show any general commercial usage, by which the day of payment was anticipated under such circumstances, and we are therefore asked to say that the note was prematurely protested, and as a consequence the notice of protest was unavailing. We think otherwise. It is established that by commercial usage, Sundays and great festivals, such as Christmas, are *dies non* in law and, that courts of justice will judicially take notice of those days and of the commercial usage to observe them, without any proof upon the subject, and therefore the note was properly protested on the 24th of December.

In the third place it is said, that the notice was defective, because it did not properly describe the note, in this, that the name of an antecedent endorser was not mentioned. The rule upon this subject is, that the notice should contain so true a description of the note, as to enable the endorser to ascertain its identity, and to know to what particular note the notice applies. In the case of *Mills vs. Bank of the United States*, 11 *Wheat.*, 436, the principles applicable to this subject are thus laid down by Judge Story: "It cannot for a moment be main-

tained, that every variance, however immaterial, is fatal to the notice. It must be such a variance, as conveys no sufficient knowledge to the party of the particular note, which has been dishonored. If it does not mislead him, if it conveys to him the real fact without any doubt, the variance cannot be material, either to guard his rights or avoid his responsibility." The variance or misdescription complained of in this case, is the omission to mention all the endorsers on said note. If the endorser has thus been misled, the notice was insufficient and invalid. Whether he has, or not, been misled by this omission in the notice, is a question of fact for the jury to determine. If the misdescription be the defect in the notice relied on by the defendant in his prayer we are now considering, then, clearly, the prayer was wrong, because it asked *the court to say*, without the intervention of a jury, that this defect in the notice was fatal, whereas the most the defendant could ask for, would be that the court should submit the question to the jury, to find if its effect had been to mislead the defendant. In case of misdescription, the question to be determined, is not one of law as to the sufficiency of notice, but a question of fact, whether the endorser was misled by the mistake. 5 *Barbour*, 681. 9 *Peters*, 44. 12 *Mass.*, 7. 11 *Wheat.*, 436.

The third exception was abandoned in argument, and we will therefore not notice it.

The fourth exception raises the question, whether or not the notice was placed in the post office in due time. Much of the argument upon this point, was based upon the assumption that there was evidence in the record, tending to show that the notice was not put into the post office until after the mail of Monday, (which was the first after the protest,) had gone or was closed. We are relieved from determining what might be a very difficult question, and one upon which there is considerable conflict of authority, because we can discover no testimony in the record, out of which the question could legitimately arise. Where the weight of testimony is all upon one side, in regard to any fact or question, it would be im-

proper for the court to submit such a question to the jury.    In
a case like the one now before us, it is only where the testi-
mony is sufficient to raise a rational doubt in regard to the
facts touching the legality of notice, that the interposition of
the jury would be invoked.    But this is not such a case.    The
witness, Karney, swears positively that the notice was placed
in the office, in time to go by *the first mail* after protest.    If
this be true, the plaintiffs have fulfilled the requirements of the
law, and it is immaterial when the letter was mailed, or left
the office for its place of destination, or when, if ever, it was
received by the endorser to whom it was directed.    But it is
said that Karney's testimony is not all the proof in the cause,
and that the evidence of the post-master at Marlborough was
sufficient to have warranted the submission of the question to
the jury.    We can see nothing in the testimony of this witness
to raise any doubt upon the subject.    He merely *infers* that
the notice in question did not come by the mail of Mon-
day, because he did not send from his office a similar notice
for another endorser, which was mailed at the same time at
Annapolis, to Nottingham until *Saturday* instead of Tuesday,
these two days being the only mail days from Marlborough to
Nottingham.    But this inference if there is any force in it what-
ever, is entirely rebutted by the additional fact proved by the
same witness, which was that it was the uniform practice of
the post-master at Annapolis, to *post-mark* letters on the day
they were *sent from that office.*    The notice before us was
post marked at Annapolis, on Monday, the 27th, therefore,
(according to the same witness,) it went on the mail of that day.
Besides, suppose it did not reach Marlborough until Wed-
nesday, as is inferred by this witness, does it thereby follow it
did not leave Annapolis on Monday ? and suppose both infer-
ences be true, that it did not reach Marlborough till Wednes-
day, or leave Annapolis till that day, would it thereby follow
the notice was not placed in the office in time for the Mon-
day's mail ?    These inferences are all based upon the erroneous
assumption, that post-masters and mail agents can make no
mistakes.    While we are not to presume ignorance or neglect

of duty on the part of post-masters, we cannot so far assume fidelity in them, as to falsify the positive statements of another public officer, in support of his own official acts, the regularity and fidelity of which are equally the subject of legal intendment or inference.

Upon the whole we can discover no error in the ruling of the court below, sufficient to warrant a reversal of this judgment.

*Judgment affirmed.*