CASE No. 854.

## CAROLINA NATIONAL BANK v. WALLACE.

1. Notice of non-payment of a promissory note to one of two executors of a deceased endorser, is sufficient.

2. While the general rule requires that where the parties reside in the same city or town, notice of dishonor must be given personally to the endorser, or, in his absence, must be left at his residence or place of business, yet where the note is made payable at a bank whose usage it is to give such notices through the post office, that mode of giving notice will be sufficient. Whether such usage exists, is a question of fact for the jury.

3. An endorser is bound by notice of dishonor actually received in due time, and where there is any evidence in the case tending to show such receipt, the question should be submitted to the jury.

4. Where the endorser of a note dies before its maturity, and the maker becomes executor, notice to such executor of non-payment is necessary to fix the liability of the endorser's estate.

Before WALLACE, J., Richland, July, 1879.

Action by Carolina National Bank against William Wallace and William P. Geiger, executors of the will of Jacob Geiger, deceased. The facts are stated in the opinion of the court.

*Messrs. Melton & Clark,* for appellants.

The general rule laid down in *Foster* v. *Sineath,* 2 *Rich.* 339, has exceptions. It may be varied by contract, or by implication, as where the bank at which the paper is payable has a different usage. 9 *Wheat.* 582; 11 *Wheat.* 431; 1 *Pet.* 32; 11 *Mass.* 88; 17 *Mass.* 452; 13 *Pick.* 419; 9 *Metc.* 585; 2 *Dan. on Neg. Inst.,* § 1013, *note;* 1 *Sm. Lead. Cas.* 920, (\*685); 1 *Am. Lead. Cas.* \*403. By the acquiescence of the community, it has become a usage; certain, reasonable and sufficiently ancient to be known. 1 *Sm. Lead. Cas.* 925, (\*688.) Usage of trade, unlike general customs, need not be immemorial. 2 *Bouv. L. Dict. tit. " Usage."* Usage becomes a part of the contract. 1 *Spears.* 323; 3 *Rich.* 333; 2 *Rich.* 339. There are so many exceptions, the rule should be declared obsolete and be abolished. 1 *Am. Lead. Cas.* 502, (\*403); 2 *Dan. on Neg. Inst.,* § 1010.

There was evidence going to show that Geiger received the notice by mail, and this question should have been submitted to the jury. If Geiger received the notice, the manner of its transmission was immaterial. 2 *Dan. on Neg. Inst.,* § 1003; 1 *Pars. B. & N.* 483; 3 *McLean* 96, 582; 26 *Me.* 45. If sent by mail, it is sufficient if received. 10. *Allen* 524, *et supra.* That fact may be presumed by the jury from the evidence. 2 *Pet.* 132; 3 *McLean* 96. There was enough evidence in this case for the jury to have presumed that the notice had been received. *Stark. on Ev.* \*741, 754, 763; 2 *Mills* 133; 21 *E. C. L. R.* 402; 26 *Me.* 45; 19 *Pick.* 114.

Notice to Geiger, executor, was unnecessary, as he knew of his own default as maker. 1 *Pars. on B. & N.* 523, 526; 2 *Dan. on Neg. Inst.,* § 1169. This case differs from *Magruder* v. *Bank,* 3 *Pet.* 87, and the grounds upon which that case was put.

*Mr. William Wallace,* contra.

The non-suit was proper under the rule laid down in *Foster* v. *Sineath,* 2 *Rich.* 339, sustained by 16 *Johns.* 221; 11 *Johns.* 231, and cases there cited. Usage cannot bind unless the endorser was conversant of it. *Chit. on Bills* 416; or exercised beyond legal memory. 2 *Bouv. Inst.* 490.

April 16th, 1880. The opinion of the court was delivered by

McIVER, A. J. This was an action against the defendants as executors of Jacob Geiger, endorser of a note drawn by the said Wm. P. Geiger, and made payable at the Carolina National Bank of Columbia. The defence interposed was an alleged failure to give due notice of the non-payment of the note, so as to charge the estate of the endorser. The testimony adduced tended to show that the bank authorities learned of the death of the endorser only a few days before the maturity of the note, and supposing that Wm. P. Geiger, the maker of the note, was the only executor, on the day the note became payable, after demand and refusal of payment, deposited a notice of non-payment in the post office, in Columbia, addressed to "Wm. P. Geiger, executor of the estate of Jacob Geiger, Columbia, S. C," he being, at the time, a resident of Columbia. Testimony was also adduced tending to show that on the back of the envelope in which the notice was enclosed, was the usual printed notice "Return to the Carolina National Bank, of Columbia, if not delivered in five days;" that it was the rule of the post office, when a letter, with a notice endorsed upon it, was not delivered within the time specified to return it to the sender; that the bank was in the habit of receiving its mail from the post office at least three times a day, (Sundays excepted,) and that the envelope above-mentioned had never been returned to the bank. It was also in evidence that it was the custom of this bank, as well as all the other banks in the city of Columbia, to give notices of the dishonor of notes through the post office, as well as persons residing in the city as to those residing elsewhere, and that such had been the usage of this bank from the time of its establishment up to and after the time of the maturity of the note in question.

Upon this evidence a motion for a non-suit was made upon the ground that a notice deposited in the post office, addressed to the endorser, where both parties lived in the same city, was not sufficient. The motion was granted and exceptions duly taken. No question seems to have been raised in the court below, and certainly none in the argument here, as to whether a notice to one of two executors would be sufficient. But as the defence rested upon the general ground of want of due notice, and as the grounds upon which the Circuit judge based his judgment are not stated, it may be proper for us to say that notice to one of two executors would be sufficient. *Dan. on Neg. Inst.,* § 1000.

The questions raised by the exceptions are : 1. Whether the general rule, where both parties reside in the same town or city, requiring notice of the dishonor of a note to be delivered personally to the endorser, or in case of his absence, to be left at his place of residence or place of business, was not so modified by the evidence as to the usage of this bank to give such notices through the post office as to render that mode of giving notice sufficient. 2. Whether the Circuit judge was not bound, under the evidence adduced, to submit the question of fact to the jury as to whether Wm. P. Geiger had actually received the notice in due season. 3. Whether any notice at all was necessary under the circumstances, Wm. P. Geiger, the maker of the note, having become one of the executors of the endorser before the note became payable, and, therefore, necessarily cognizant of the fact of the non-payment of the note.

As to the first question; it cannot be denied that the *general* rule is that where the parties reside in the same town or city, the notice must be given to the person entitled to it, either personally, or in case of his absence, it must be left at his residence or place of business. *Story on Prom. Notes,* § 312 ; 2 *Dan. on Neg. Inst.,* § 1005, and this rule has been recognized in this state. *Foster* v. *Sineath,* 2 *Rich.* 338. And although it has been suggested that this rule " has lost its reasonable force and exists only by authority," and, therefore, should be abrogated rather than undermined, as it has been, by exceptions, (1 *Am. Lead. Cas.* 403 ; 2 *Dan. on Neg. Inst.,* § 1010,) yet we do not regard it as

within our province to adopt the remedy proposed, and, therefore, leave the suggestion to be considered by that department of the government to which it properly belongs. To this rule, there are, however, exceptions, one of which is that where a note is made payable at a particular bank, and it is proved to be the usage of such bank to give notices through the post office to persons residing in the same town or city, that mode of giving notice will be sufficient. This is upon the ground that persons who become parties to such a note are presumed to have knowledge of the usages of the bank at which they have chosen to make the note payable, and have agreed to be bound by such notice as it is the usage of the bank to give. In the American notes to the case of *Wigglesworth* v. *Dallison*, 1 *Smith Lead. Cas.* 416–17, it is said :

" It has been repeatedly decided, in relation to the contract of endorsement, that an established usage of particular banks as to the time of demanding payment and giving notice differing from the time fixed by the general law-merchant, with which banks the parties deal, is evidence of intention and consent that the contract of the endorser shall be modified according to this usage, and that, therefore, the endorser is bound by such demand and notice as the usage prescribes ;    *    *    *    and the same principle has been applied to the *manner* of making the demand," citing the cases to sustain both propositions.

It would seem necessarily to follow from this that the same principle would apply to the manner of giving notice, and a recent writer, Daniel, in his work on Negotiable Instruments, states that it has been so held in several cases which he cites, but to which we have not access. Nor is it necessary that knowledge of such usage should be brought home to the person sought to be affected by it ; for, as is said by Marshall, C. J., in *Bank of Washington* v. *Triplett*, 1 *Pet.* 33, adopting the language which had been previously used by Story, J., in *Mills* v. *Bank of U. S.*, 11 *Wheat.* 438 :

" When a note is made payable at a bank whose invariable usage it is to demand payment and give notice on the fourth day of grace, the parties are bound by that usage, whether they have a personal knowledge of it or not. In the case of such a note the

parties are presumed, by implication, to agree to be governed by the usage of the bank at which they have chosen to make the security itself negotiable."

These remarks will apply as well to the *manner* of giving notice as to the *time* when the demand of payment should be made and the notice of non-payment should be given. This view was plainly recognized in the case of *Bowling* v. *Harrison*, 6 *How.* (*U. S.*) 248, where a charge to the jury that, in order to fix the liability of the endorser, who resided in the same town where the note was payable, " the notice must be personal, unless he had agreed to receive it elsewhere, *or unless by custom and usage of the bank at which the note is payable, the notice of non-payment was left at the post office,*" was approved, although it seems to have been held in that case that there was no sufficient proof of such a custom or usage as would dispense with notice— the proof, in fact, being exactly the other way, and that it was the usage to give notice personally, unless there was a memorandum on the note providing for a different mode of notice.    But to make such usage effectual it must, of course, be properly proved.    As is said in the case just cited: " A usage to be binding should be definite, uniform and well known.    It should be established by clear and satisfactory evidence, so that it may be justly presumed that the parties had reference to it in making their contract."    To this we may add that the usage should be reasonable.    The question, therefore, should have been left to the jury to determine whether there was sufficient proof of such a usage at the plaintiff bank as would, upon the principles above announced, dispense with the necessity of notifying the endorser personally, or by leaving a notice for him at his residence or place of business.

As to the next question, there can be no doubt that whatever may have been the mode adopted of giving the notice, if the party actually received it, and received it in due time, he would be bound, and the mode of transmission would, in such a case, become wholly immaterial.    2 *Dan. on Neg. Inst.*, § 1003, where the cases are cited.    So that if there was any evidence in this case tending to show that the notice was actually received, *and received in due time,* the question should have been left to the

jury. The fact that a party has received such a notice may be proved, like all other facts, either by direct or circumstantial evidence, and while it is very clear that there was no direct evidence in this case to show that William P. Geiger received the notice, there were circumstances adduced in evidence which should have been submitted to the jury with instructions to inquire whether such circumstances satisfied their minds, not only that the notice was actually received, but that it was received *in due time.* The evidence upon this point may have been of a slender character, but still that was a matter for the jury and not for the court to pass upon, and, therefore, we think that the non-suit was improperly ordered.

As to the third question, we are entirely satisfied that there was no error in the ruling of the Circuit judge. The object of notice is not merely to inform the endorser that the note is not paid, but also to let him understand that the holder looks to him, as well as the maker, for payment; and without such notice the endorser would have a right to conclude either that the note was not paid or that the holder was satisfied to look alone to the maker for payment. *Tindall* v. *Brown,* 1 *T. R.* 169–70. We think, too, that this case comes within the reason of the decision of the Supreme Court of the United States in the case of *Magruder* v. *Union Bank,* 3 *Pet.* 87, recognized in *Bank* v. *Tyler,* 4 *Pet.* 384, and re-affirmed in *Union Bank* v. *Magruder,* 7 *Pet.* 287. In that case the maker having died before the maturity of the note, the endorser became his administrator, and it was held that demand and notice were nevertheless necessary. There, as here, it was contended that it was entirely useless; but Marshall, C. J., in delivering the opinion of the court, said, after stating the general rule as to demand and notice: "The defendant in error does not controvert this rule, but insists that this case does not come within it, because demand of payment and notice of non-payment are totally useless, since the endorser has become the personal representative of the maker. He has not, however, cited any case in support of this opinion, nor has he shown that the principle has been ever laid down in any treatise on promissory notes and bills. The court ought to be well satisfied of the correctness of the principle before it sanctions so

essential a departure from established commercial usage." And after suggesting that it was possible that assets which might have been applied in payment of the note, had payment been duly demanded, may have been diverted to other purposes, or that it was possible that the maker had, during his lifetime, paid the note before maturity, concludes as follows: "Be that as it may, no principle is better settled in commercial transactions than that the undertaking of the endorser is conditional. If due diligence be used to obtain payment from the maker without success, and notice of non-payment be given to him in time, his undertaking becomes absolute, not otherwise." In this case we may also say that no case has been cited in support of the view contended for by the appellant, but on the contrary, Daniel, in his work on Negotiable Instruments, Section 1175, seems to take the same view of the matter which we have done and cites the cases. William P. Geiger may very well be regarded as having knowledge of the fact that the note was not paid, but William P. Geiger, as maker of the note and as executor of the endorser, are two different and distinct persons in law, and while he may have known that he, as maker, had not paid the note, yet he could not know, until notified, that he, as endorser or representative of the endorser, would be expected to pay it. It was possible that the bank might have seen fit to look alone to the maker for payment, and therefore William P. Geiger, as executor of the endorser, might have applied, as he would have had the right to apply, the assets belonging to his testator to other purposes, until he was notified, not only of the non-payment of the note, but that the estate which he represented would also be looked to for payment.

The judgment of the Circuit Court is set aside and a new trial is ordered.

WILLARD, C. J., and McGOWAN, A. J., concurred.